94        KENTUCKY REPORTS.        [Vol. 106

Reddick, &c., v. The United States Building & Loan Assn.'s Assignee.

CASE 9—LIQUIDATION OF INSOLVENT BUILDING & LOAN AS-
SOCIATION—MARCH 11.

# Reddick, Etc. v. The United States Building & Loan Association's Assignee. Stofer, Etc. v. Same.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY DIVISION.

1. BUILDING AND LOAN ASSOCIATIONS—LIQUIDATION—RIGHTS OF WITH-
DRAWING MEMBERS.—In the liquidation of the affairs of an insol-
vent building and loan association, members who have given
notice of withdrawing more than thirty days before the assign-
ment are not entitled to priority in the distribution of assets.
By-laws declaring the rights of withdrawing members and
section 860 of the Kentucky Statutes are limited in their appli-
cation to going concerns.

2. SAME—JURISDICTION TO FORECLOSE MORTGAGE.—In an action to
liquidate the affairs of an insolvent building and loan associa-
tion, the court has no jurisdiction to foreclose a mortgage on
land situated in another county.

3. SAME—SETTLEMENT WITH BORROWING MEMBERS.—In settling with
borrowing members of an insolvent building and loan associa-
tion, the borrower is to be charged with the amount of his loan
and legal interest and credited by his payments of premium
and interest on a partial payment basis, and where the value
of his stock is shown by him with reasonable certainty, he should
be credited with that also.

CLARENCE DALLAM FOR THE APPELLANTS, REDDICK, ETC.

1. On the jurisdiction of the Jefferson Circuit Court to render a
judgment against the appellant when service of summons was
had in McCracken county; and, further, the jurisdiction of said
court to order a sale of real estate located entirely in McCracken
county to satisfy a mortgage lien thereon; 4 Dana, 294; 4 Mon.,
437; Civil Code, secs. 62, 21, 428, sub-sec. 2, 438; Phillips on Code
Pleading, secs. 181, 468; 1 Bush, 107; 4 Ky. Law Rep., 348; 87 Ky.
107; 14 Ky. Law Rep., 444; 2 Bush, 128; 14 Bush, 788; 78 Ky.,

Reddick, &c., v. The United States Building & Loan Assn.'s Assignee.

496; 94 Ky., 271; 2 B. Mon., 203; 80 Ky., 647; 11 Bush, 177, 93 Ky., 92; 13 B. Mon., 403; 2 Bush, 552; 79 Ky., 271; 1 Met., 242.

2. On the duty and power of the chancellor in allowing credit for the amount paid in by the borrowing members as dues; whether to allow full credit therefor, or to allow as a credit, the approx- imate distributable value of the stock.  18 Ky. Law Rep., 768; 19 Ky. Law Rep., 1176; 6 Ohio Dec., 254; 29 Law Rep., 127; 40 Md., 127; 48 Md., 448; 58 Md., 279; 64 Md., 338; 8 Appeal Cases, 235; 11 Appeal Cases, 489; 48 Ga., 44; 30 L. R. A., 693; Endlich on Bldg. & L. Assns. (1st. ed.), sec. 496; 8 S. C., 207; 107 Mass., 1; 136 U. S., 223; 136 U. S., 89; Bispham Eq., sec. 580; Endlich on Bldg. & Loan Assn.' (2d. ed.), sec. 531.

WILLIAM W. WATTS FOR THE APPELLANTS, STOFER, &C.   (W. W. & J. R. WATTS, M. A., D. A., & J. G. SACHS, OF COUNSEL.)

1. A subscriber for shares in a corporation must at his peril in- form himself of the provision of its charter or articles.   Oil City Land & Improvement Co. v. Porter, 99 Ky., 524; Thomp- son's Com. on Corps., sec. 941; Cook on Stock and Stockholders, sec. 54; Endlich on Bldg. Assns. (2d. ed.), sec. 269.

2. A by-law enters into the compact between the corporation which adopts it and every taker of a share; it is in the nature of a contract.   Kent v. Quicksilver Mining Co., 78 N. Y., 159; Hol- yoke B. & L. Assn. v. Lewis, 27 Pac. Rep.. 872; Bergman v. Assn., 27 Minn., 275; McKenna v. Diamond State Loan Assn., 18 Atl. Rep., 905; Pioneer Savings & Loan Co. v. Brockett, 58 Ill. App., 204; Wm. Englehardt v. Fifth Ward Permanent Dime Savings & L. Assn., 148 N. Y., 281; Thompson on Bldg. Assns. 31; Thompson's Com. on Corps., sec. 940; Endlich on Bldg. Assns. (2d ed.), sec. 269.

3. Where it is stipulated by the certificate of stock that the by-law of the association shall be part of the contract between the as- sociation and the stockholder, the latter will be bound by the by-laws and will not be permitted to question the legitimate exercise of the powers conferred thereby upon the association. Pioneer Savs. & L. Assn. v. Brockett, 58 Ill. App., 204; Wm. Englehardt v. Fifth Ward Permanent Dime Savings & L. Assn., 148 N. Y., 281.

4. Upon the purchase of stock in a corporation, and issue of a cer- tificate therefor, the purchaser acquires vested rights which

**96** KENTUCKY REPORTS. [Vol. 106

Reddick, &c., v. The United States Building & Loan Assn.'s Assignee.

can not be taken from him except by his acquiescence or consent. Kent v. Quicksilver Mining Co., 78 N. Y., 159; Holyoke Bldg. & L. Assn. v. Lewis, 27 Pac. Rep., 872; Bergman v. Assn., 29 Minn., 275; McKenna v. Diamond State L. Assn., 18 Atl. Rep., 905; Niblack's Benefit Societies (2d ed.), 113; Thompson on Bldg. Assns., 31; Thompson's Com. on Corps., sec. 946; Cook on Stock and Stockholders, sec. 700a; Endlich on Bldg. Assns. (2d ed.), sec. 269.

5. It is the duty of stockholders to be prompt in their application for relief against the acts of the corporation before innocent third persons suffer; otherwise, assent, acquiescence, or ratification will be presumed and the doctrine of estoppel will apply. Kent v. Quicksilver Mining Co., 78 N. Y., 159; Oil City Land & Imp. Co., v. Porter, 99 Ky., 254; Maxville, &c., Turnpike v. Barnes, 14 Ky. L. R., 431; Pocantico Water Co., v. Low., 46 N. Y. S., 633.

6. Persons buying stock in a corporation will, as between themselves and the corporation and other stockholders be deemed innocent third persons. Kent. v. Quicksilver Mining Co., 78 N. Y., 159.

7. An unconscionable arrangement will not be disturbed when there has been a ratification of it with the knowledge of all its bearings after time has been had for consideration. Acts of a corporation, not illegal in themselves or by prohibition, but which are *ultra vires* of the corporation, may be made good by the assent of the stockholders so far, at least, that third persons dealing in good faith with the corporation will be protected in a reliance on those acts. Kent v. Quicksilver Mining Co., 78 N. Y., 159; Pocantico Water Co. v. Low, 46 N. Y. S., 633; Maxville, &c., Turnpike v. Barnes, 14 Ky. Law Rep., 431.

8. After a corporation has enjoyed the benefit of a contract made in good faith, every reasonable presumption should be made to hold the transaction binding. A fundamental principle of the law is that one must do equity before he can ask that equity be done him. The benefits can not be retained under the contract when the contract is to be rescinded. And before he can ask that the equitable powers of a court be exercised for him, he must show that he has at least acted honestly with reference to or in connection with the transaction of which he complains. Maxville, &c., Turnpike v. Barnes, 14 Ky. Law Rep., 431; Kent

Reddick, &c., v. The United States Building & Loan Assn.'s Assignee.

v. Quicksilver Mining Co., 78 N. Y., 159; Pocantico Water Co. v. Low, 46 N. Y. S., 633.

9. The insolvency of a building and loan association is not the point at which the right of a shareholder to withdraw ceases. The association can not be insolvent. Powers v. Bluegrass, &c., Assn., U. S. C. C. Ky. District; *in re* Ambition Society, 1st. L. R. Ch., 1896, 89; Ky. Stats., secs. 564, 855, 860; *in re* National, &c., Assn., 9 W. N. C., 79.

10. When a corporation ceases to be a going concern the assets are to be distributed as though preferred shares had been issued, unless a preference as to capital has been expressly contracted for or has been given by statute. Cook on Stock and Stockholders, sec. 278 and notes; Hohenshell v. Home Savings & Loan Assn., 41 S. W. R., 948.

11. The by-laws of a building and loan association when construed in connection with Kentucky Statutes, secs. 564, 855, 860, gives to the purchaser of stock a vested right to withdraw in compliance therewith, and on compliance the stockholder is no longer such, nor liable for future payments nor interested in future profits. Charter and by-laws of U. S. Bldg. & Loan Assn.; Ky. Stats., secs. 564, 855, 860; Holyoke Bldg. & L. Assn. v. Lewis, 27 Pac. Rep., 872; Bergman v. Assn., 29 Minn., 275; McKenna v. Diamond State Loan Assn., 18 Atl. Rep., 905; Louisville German, &c., Assn. v. Wissing, 4 Ky. Law Rep., 443; McNab v. Southern Mutual Bldg. & L. Assn., 27 S. E. R., 543; Heinighausen & Wolff v. Fischer, 50 Md., 583; U. S. Bldg. & L. Assn. v. Silverman, 85 Pa., 394; Decatur Bldg. & Investment Co. v. Neal, 97 Atl., 717; Hohenshell v. Home Savings & L. Assn., 41 S. W. R., 948; Blackburn v. District Benefit Bldg. Assn., 24 L. R. Ch. Div., 421; *In re* Mutual Society, 24 Law Rep. Ch. Div., 425; Mary Walton v. Henry Edge, &c., 10 L. R. App. Cases, 33; Barnard v. Tomson, 1 L. R. Ch. (1894), 374; *In re* Ambition Society, 1 L. R. Ch. (1894), 89; Scheffiel v. South Yorkshire Society, 22 Q. B. Div., 470; Murray v. Scott, 9 App. Cases, 519; Mayer v. Attorney General, 9 Ins. Law Journal, 671; Lepore v. Twin Cities Natl. Bldg. & L. Assn., 40 W. N. C., 548; Kent v. Quicksilver Mining Co., 78 N. Y., 159; Oil City Land & Improvement Co. v. Porter, 99 Ky., 254; Maxville, &c., Turnpike Co. v. Barnes, 14 Ky. Law Rep., 431; Pocantico Water Works Co. v. Low, 46 N. Y. S., 633; *In re* Natl. Savings. & L. Assn., 9 W. N. C., 79; Powers v. Blue Grass, &c., Assn., U.

[7]

98        KENTUCKY REPORTS.        [Vol. 106

Reddick, &c., v. The United States Building & Loan Assn.'s Assignee.

S. C. C. Ky. District; Niblack's Benefit Society (2d ed.), 113; Thompson on Bld. Assns., 31; Thompson's Com. on Corps., sec. 946; Cook on Stock and Stockholders, secs. 54, 278, 700a; Endlich on Bldg. Assns. (2d ed.), sec. 269; Criswell's Appeal, 100 Pa., 488; Idem, 102 Pa., 184; Chapman v. Young, 65 Ill. App. Court Rep., 131; Gibson v. Safety, &c., Assn., 48 N. E. R., 580; Rabbitt v. Wilcoxen, 72 N. W. R., 306; Wm. Englehardt v. Fifth Ward, &c., Assn., 148 N. Y., 281; Pioneer Savings & L. Assn. v. Brockett, 58 Ill. App., 204; Texas Homestead B. & L. Assn. v. Kerr, 13 S. W. R., 1020; Heinbokel v. Natl. S. L. & B. Assn., 59 N. W. R., 1050; Granite State Provident Assn. v. Lloyd, 145 Ill., 620; Strohen v. Franklin S. F. & L. A., 115 Pa., 273; Towle v. American B. & L. Assn., 75 Fed. Rep., 938; Sills v. Natl. S. & B. L. Assn., Chicago Daily Law Bulletin, Jany. 16, 1896; Knoblauck v. Robt. Blum B. & L. Assn., 25 Pitts. Legal Journal, Old Series, 25; Paffert v. Same, same publication.

In a supplemental brief same counsel cited Southern Bldg. & L. Assn. of Knoxville, Tenn., v. Price, from the Court of Appeals of Maryland April term, 1898.

CARUTH, CHATTERSON & BLITZ for appellee    (KOHN, BAIRD & SPINDLE, and SAMUEL A. LEDERMAN, of counsel.)

1. The circuit courts of the State of Kentucky have original jurisdiction of all matters in law and equity, except such matters as have been exclusively delegated to one of said courts, or to some other tribunal. Genl. Stats., 1883, p. 281. sec. 1; present constitutional provision, p. 120, sec. 126; Ky. Stats., sec. 966.

2. Actions to settle insolvent estates shall be brought in the circuit court of the county where the assignment is made. Ky. Stats., sec. 96.

3. Actions to settle the estates of deceased persons must be brought in the county in which the personal representative qualified. Civil Code, sec. 65.

4. All persons having an interest in the property left by decedent, and the creditors so far as known, must be parties to the action. Civil Code, sec. 428, sub-sec. 2; sec. 25.

5. This applies also to assignments. Civil Code, sec. 438 and chap. 3, title 10.

6. Actions which must be brought in a particular county. Civil Code, sec. 62.

7. This section (62) held not to apply to actions for the settlement

Reddick, &c., v. The United States Building & Loan Assn.'s Assignee.

of an insolvent estate.  Mechanics' Trust Co. v. Cobb, 14 Ky.
   Law Rep., 444; Webb v. Wright, 2 Bush, 126.
8. Jurisdiction of the circuit court in actions to settle insolvent
   estates, and the right to sell property located in other coun-
   ties determined.  Mechanics' Trust Co. v. Cobb, 14 Ky. Law Rep.,
   444; Webb v. Wright, 2 Bush, 126; Fishback v. Green, 87 Ky.,
   107; Hendrix v. Nesbitt, 16 Ky. Law Rep., 746.
9. Who are necessary parties.  Civil Code, secs. 25, 428; Citizens'
   Bank v. Boswell, 93 Ky., 92.
10. General equity doctrine.  John H. White v. Boyd Ewing Re-
   ceiver, 159 U. S., 36 (Co-operative series); Peck v. Elliott, 79
   Fed. Rep., 10; Caufman v. Sayre, 2 B. M., 203.
11. Borrowing member is not entitled to a credit upon his loan.
   of dues paid in on stock.  Rogers v. Rains, 18 Ky. Law Rep.,
   768; Sachs v. Duckworth B. & L. Assn., 4 Ohio N. P., 214;
   Choisser v. Young, 69 Ill. App., 252; Curtis v. Granite State
   Provident Assn., 36 Atl. Rep., 1023; Knutson v. North Western
   L. & Bldg. Assn., 69 N. W., 889.

SAME COUNSEL ON APPEAL OF STOFER, &c.

1. The United States Building and Loan Association is governed by
   secs 854 to 878, Kentucky Statutes.  Ky. Con., sec. 190; Ky.
   Stats., sec. 573; Resolution of Association, March 3, 1896;
   Bank Tax Cases, 19 Ky. Law Rep., ——; Sherman v. Smith, 2
   Black (U. S.); 587; Miller v. New York, 15 Wall. (U. S.), 478.
2. Both the by-law and the statute provide that withdrawing mem-
   bers shall share losses according to the amount paid on their
   shares.  Ky. Stats., secs. 860, 861, 869.
3. If any conflict exists between a by-law and the statute, the lat-
   ter prevails.  Trowbridge v. Building Co., 52 Pac., 328.
4. Where a right is granted on condition, a declaration on the right
   must allege the existence of the condition.  Englehard v. Bldg.
   Co., 148 N. Y., 281; Heinbokel v. Bldg. Co., 58 Minn., 340; Bldg.
   Co. v. Kerr., 13 S. W. R., 1020; Christian's Appeal, 102 Pa. St.,
   184.
5. The insolvency of a building and loan company operates to with-
   draw all the stock the same as a notice and to mature all con-
   tracts.  Custis v. Granite State Bldg. Co., 31 Atl., 1023; Kenton
   v. Bldg. Co., 29 N. W., 889; Stroken v. Bldg. Co., 8 Atl., 843;
   Eversmann v. Bldg. Co., 41 N. E. R., 139; Post v. Building Co.,
   37 S. W. R., 216; Christian's Appeal, 100 Pa. St., 184; Crisman's

Reddick, &c., v. The United States Building & Loan Assn.'s Assignee.

Appeal, 100 Pa. St., 488; Rogers v. Raines, 18 Ky. Law Rep., 768.

6. The English cases are much misunderstood in their application. They simply construe and apply the by-laws as a contract be tween the members. Blackburn v. Bldg. Co., 24 L. R., Ch. Div, 421.

7. Rule 3, under which the English cases allowed a priority to withdrawing members, expressly granted a priority and is in no way similar to the by-law or statute now in question.

8. The American doctrine is, that by-laws of a building and loan company are made with reference to a going, solvent concern and do not apply to a case of insolvency; that the fundamental principle and legal policy for the government of these associations is equality among the members, and any attempt to give a preference to any member or class is void. Hohenshell v. Bldg. Co., 41 S. W. R., 948; Endlich on Bldg. Co. (2d ed.), secs. 514, 498, 499; Christian's Appeal, 102 Pa. St., 184; Criswell's Appeal, 100 Pa. St., 488; Rabbitt v. Wilcoxen, 72 N. W. R., 306; Latimer v. Bldg. Co., 81 Fed., 776; Gibson v. Bldg. Co., 48 N. E. R., 580; Chapman v. Young, 65 Ill. App., 131; Towle v. Bldg. Co., 75 Fed. Rep., 928; Arling v. Bldg. Co., 8 Ky. Law Rep., 699; Friel v. Bldg. Co., ˙1 L. Rec. Rep., 217; Brown v. Sowders, 9 Mackey, 455; Knoblauck v. Bldg. Co., 25 Pitts. L. J., 39; Paffert v. Bldg. Co., Id., 40; Harvey v. Bldg. Co, 16 W. N. C., 450; Haverty v. Bldg. Co., Id., 451; Rogers v. Rains, 18 Ky. Law Rep., 768.

ISAAC T. WOODSON FOR THE INSTALLMENT STOCKHOLDERS.

1. Generally the preferred stockholder is but a shareholder with a right to have his dividend paid before dividends on the common stock are paid, and he is not entitled to any dividend until the corporation has funds which are properly applicable to the payment of dividends. A contract that dividends shall be paid on the preferred stock, whether any profits are made or not, would be contrary to public policy and void. Cook on Stock and Stockholders, vol. 1, par. 271; Endlich on Bldg. Assns., 464; Guinness v. Land Corporation, L. R., 22; Ch. D. 349.

2. By-laws must be reasonable, not contrary to the law, nor the charter, nor opposed to public policy. By-laws which are manifestly contrary to the interest of the association, and all nuga-

Reddick, &c., v. The United States Building & Loan Assn.'s Assignee.

tory and vexatious, unequal, oppressive by-laws are void. Angell & Ames on Corporations, 347; Am. & Eng. Ency. of Law, 1021.

3. Only the powers necessary for the convenient prosecution of the authorized business of the association connected with the legislative intent may be applied; and no other powers exist except such as are expressly conferred upon the association by statute. Ashland, &c., Co. v. Centralia, 9 Luz. Leg. Reg. Pa., 41; Arline v. Kenton Bldg. Assn., 26 Am. L. Reg. N. S., 273; Am. & Eng. Ency. of Law, 1017.

4. All provisions of articles of incorporation of a building and loan association in Kentucky are subject to the statutory provisions of the State, and when repugnant thereto must fail, for the reason that the statute law is the whole law of the case. Broaddus' Devisees v. Broaddus' heirs, 10 Bush, 300; Bergman v. Association, 29 Minn., 275; Endlich on Bldg. Assns. (2d ed.), secs. 218, 104-106; Steinharter v. Wolfstein, 13 Ky. Law Rep., 871; Latimer v. Bldg. Co., 81 Fed. Rep., 776; Covington v. McMichael, 18 B. M., 286.

5. Paid-up stock in an insolvent association can not be treated as preferred stock unless the statute authorizing it has been complied with. Endlich on Bldg. Assns., 104, 262-265.

6. Neither paid-up stock nor installment stock can be converted into preferred stock in an insolvent association by giving notice of withdrawal. Endlich on Bldg. Assns., 104; Towle v. Bldg. Co., 75 Fed. Rep., 938; *In re* Sutherland, &c., 24 Queen's Bench Division, 394 (decided in 1890).

7. The mutual character of the association prescribed that the burden (of losses) must be sustained by the stockholders according to the amount of their stock, for he who participates in the benefit of a business must assist in bearing the burden. Eversman v. Schmitt, 53 O. St. Rep., 174; Knoblauck v. Robert Blumm Bldg., &c., Assn., 25 Pittsburg L. J., 39; Paffert v. Same, Idem, 40; Simpson v. Lou. Bldg. Assn.

8. A building association is insolvent when it is unable to satisfy the legal demands of its own members. Endlich on Bldg. Assns., 51.

9. In Kentucky under the statutory regulations, the insolvency of a building association terminates the right of withdrawal and preference in every case, unless to the extent such rights are established by statute and have been secured to the stockholder by pursuing the statutory methods. Criswell's Appeal,

Reddick, &c., v. The United States Building & Loan Assn.'s Assignee.

100 Pa. St., 488; Post v. Mechanics' Bldg., &c., Assn., 97 Tenn., 408; Brown v. Sowders, 9 Macky, 455; Endlich on Bldg. Assns., 102-108; Christian's Appeal, 102 Pa. St., 184; *In re* Sutherland, &c., Bldg. Society, 24 Q. B. D., 349 (1890); Rogers v. Raines and Simpson v. Lou. Bldg., L. & Savings Assn., ————.

JAMES E. GAITHER FOR THE STOCKHOLDERS NOT WITHDRAWING

Notice of withdrawal from an insolvent loan association does not entitle members to priority of payment over their fellow stockholders. Endlich on Bldg. & L. Assns., p. 91; Chapman v. Young, 65 Ill. App., 131; Christian's Appeal, 102 Pa. St., 184; Hohenshell v. Home Savings & L. Assn., 41 S. W. R., 948; Endlich on Bldg. Assns., sec. 514; Criswell's App., 100 Pa., 488; *In re* assigned estate of Natl. Savings L. & Bldg. Assn., 75 Fed. Rep., 938; Sills v. Natl. S. & Bldg. L. Assn., Chicago Daily Law Bulletin, Jany. 16, 1896.

BENNETT H. YOUNG AND W. H. GILTNER FOR THE BORROWING STOCKHOLDERS.

1. Upon the insolvency of a building and loan association, the borrowing members should be entitled to a credit upon their indebtedness to the company of the approximate value of their stock. Rogers v. Rains, 18 Ky. Law Rep., 768; 4 Am. & Eng. Ency. of Law, 1081; Buist v. Bryan, 21 S. E. R. (S. C.), 537; Assn. v. Bollinger, 12 Rich. Eq. (S. C.) 124; Straus v. Carolina Interstate Assn., 23 S. E. R. (N. C.), 450; Cook v. Kent, 55 Mass., 254; Windsor, &c., v. Bandell, 40 Md., 178; Low Street Bldg. Assn. v. Zucker, 48 Md., ——; Bldg. Assn. v. Buck, 64 Md., 338; s. c. 14 Am. & Eng. Corp. Cases, p. 649; Brownlie v. Russell, L. R. 8 Appeal Cases, 235; Bispham Equity, sec. 580.

2. The stockholders who had given notice of their intention of withdrawing prior to the date of the assignment, are not entitled to preference over any other class of stockholders. Thompson on Bldg. Assns., sec. 2, p. 60: sec. 10, p. 124; Hohenshell v. Bldg. Co., 41 S. W. R., 948; Weirman v. International Bldg. Assn., 67 Ill. App., 551; Loan Assn. v. Hollon, 63 Ill. App., 66; Eversmon v. Schmitt, 53 O. St., 184; Towle v. Amer. Bldg. & L. Assn., 75 Fed Rep., 940.

Reddick, &c., v. The United States Building & Loan Assn.'s Assignee.

WILLIAM FURLONG AND JOHN ROBERTS FOR APPELLEES, THE COMMON STOCKHOLDERS.

1. There can be no withdrawing stockholders of a corporation as of right under the 56th chapter of the General Statutes of Kentucky, because the advertisement required of the amount of capital stock authorized; and the times when and conditions upon which it is to be paid in, would be futile if the capital stock could be withdrawn after paid in. See sec. 5, ch. 56.

2. There could have been no such thing as preferred stock in a corporation organized under the 56th chapter of the General Statutes. See act of April 15, 1882, Genl. Stats., p., 773.

3. When a corporation becomes insolvent or otherwise incapable of existence, then its assets must be distributed among creditors and stockholders according to the principles of equity. Rogers v. Rains, 18 Ky. Law Rep., 768.

4. No corporation organized under the 56th chapter of the Genl. Stats. can avail itself of the provisions of the act of April 5, 1893, without first amending its articles of incorporation, or re-incorporating under that act. Ky. Stats., sec. 554.

JUDGE HAZELBRIGG DELIVERED THE OPINION OF THE COURT.

Becoming insolvent, the United States Building & Loan Association, incorporated in 1890 in Jefferson county under the general law then in force, on February 24, 1897, made an assignment of all its assets for the benefit of its creditors, to the Columbia Finance & Trust Company of Louisville.

This suit by the assignee to settle the trust immediately followed, the association and a number of stockholders and creditors being made defendants. It is averred in the petition that in March, 1896, the association accepted the provisions of the new constitution and the laws of the State, and thereby became entitled to the benefit of the provision of the general corporation act of 1893 and we shall assume that, therefore, the asssociation is to have the benefit of the general building and loan association act, as found in the Kentucky Statutes.

The first question to notice on this appeal is that presented by those stockholders who had given what are known as their "withdrawal notices" more than thirty days prior to the assignment, and who, therefore, claim a preference over other stockholders in the distribution of assets.

The by-laws relied on are as follows:

"Sec. 55. Any installment stock not delinquent, nor pledged upon a loan, may be withdrawn by the owner thereof at any time after six months from date of certificate, or thirty days' written notice to the association; and, upon receipt of such notice, all liability to make further payments, and all right to share in the profits thereafter declared shall cease. On such withdrawal a shareholder shall receive, upon the surrender of his certificate of shares, the total amount paid in by him in monthly payments on his shares, together with two-thirds of all credited dividends, less all fines that may have accrued. . . .

"Sec. 59. If the undivided profits on hand at any time are insufficient to pay any loss that may occur, the balance shall be charged up to the shares in good standing, *pro rata,* in proportion to the value thereof, and, if any of the shares be withdrawn, the amount so charged shall be deducted from the amount due on such shares."

It may not be that these by-laws were, in fact, authorized by the statutes in force when they were adopted. Originally (1873) section 7 of chapter 56 of the General Statutes contained a clause authorizing withdrawals of stock; but this clause was repealed in 1878, and it is doubtful if the amendment of 1882 relied on was intended to, or did re-enact this clause.

However, we do not regard these by-laws on the sub-

ject of withdrawals as differing from the provisions of the statutory enactment of 1893 on the same subject, and shall, therefore, treat them as in force, especially as counsel for these stockholders rest their claim of preference alike on the by-laws and the statutes.

The statutory regulation on the subject is as follows:

"Sec. 860. A member may withdraw his unpledged shares at any time by giving thirty days' notice of his desire to do so, in a book to be provided by the corporation for the purpose, and shall thereupon receive the withdrawing value of his shares at the date of the notice; this withdrawing value shall be the amount of the dues paid thereon, together with such proportion of the profit as the by-laws may determine, less all fines, expenses and proportionate part of every unadjusted loss; but at no time shall more than one-half of the funds in the treasury be applicable without the consent of the directors, to the demand of the withdrawing members. . . ." Kentucky Statutes, section 860.

Confining ourselves to a consideration of these provisions as embodying the contract between the parties, and giving them whatever force their language reasonably implies, we are of opinion that the by-laws do not, either when regarded independently of the statutory enactment, or when taken in connection with that enactment, authorize the withdrawing stockholder to the priority contended for. And certainly the statutory provision does not so authorize.

Under whatever circumstances the withdrawal is attempted to be made, the value of the withdrawer's share must be ascertained with reference to the unadjusted losses, if any, of the association.

It is true that under section 55 of the by-laws that val-

ue is fixed at the total amount paid in by the member "in monthly payments on his shares, together with two-thirds of all credited dividends," less only all "fines" that may have accrued. But this is only a part of the contract. Under section 59, when losses accrue, they are to be paid out of the undivided profits, and, if these profits are insufficient, then the balance of the loss is to be charged up to the shares in good standing, including any shares that are to be withdrawn.

When we look to the statutory provisions, the language is equally plain. The withdrawing value of the share "shall be the amount of the dues paid thereon, together with such proportion of the profits as the by-laws may determine, less all fines, expenses and proportionate part of any unadjusted loss."

Where the concern is a "going one," and the payment of the withdrawal demands is not met promptly because of a temporary lack of funds, the value of the withdrawing share is ordinarily shown by the book value of the share at the time of the notice of withdrawal, or at least it is easily ascertainable.

But when the concern can not meet these demands because it is insolvent, and the scheme is impossible of performance, then the expenses and the proportionate part of any unadjusted loss are impossible of immediate ascertainment or adjustment, and must so remain until the final settlement of the concern. Upon this settlement the value of the withdrawing share can not differ from the value of every other share in the association. But, looking beyond the mere language of the by-laws and the statutes, it is manifest that these withdrawal contracts are provided for with respect to going concerns only.

The right of withdrawal is not an absolute one, any more than is the right of the borrowing member to pay his loan by monthly payments until the maturity of his stock cancels his loan. Ordinarily the language of the borrower's contract does not attempt to fix the date of this maturity. He simply agrees to pay until the accumulations of the enterprise shall mature his stock. Sometimes, however, there is a fixed and guarantied period of maturity. But in the latter event no more than in the former can he rely on the exact terms of his contract, and these terms all come to nothing when the scheme falls through.

The chancellor can not carry on the enterprise when the parties themselves have failed, and the only thing possible is to wind it up on equitable principles.

As in the one case the borrowing member can not complain of the violation of his contract coming from a precipitation of the maturity of his loan, so in the other the withdrawing member can not say that he has an absolute right to a specific performance of the letter of his contract.

Judge Endlich, in his work on building associations (2d ed., section 108), affirms the doctrine that "the fact of insolvency of an association negatives the right of any one to obtain a priority over his fellows by giving notice of withdrawal;" citing Christian's appeal, 102 Pa. St., 184, and other cases.

In the well-considered case of Hohenshell v. Saving Association, 140 Mo., 566, [41 S. W., 948], (published also with annotations in 4 Am. & Eng. Dec. Eq., 9),this view is forcibly presented, a statute similar to ours being under consideation. The Missouri court is fortified by numerous cases referred to in the annotations indicated. There are

cases to the contrary, the latest one of which is S. B. & L. Association v. Price (Md., 1898), [41 Atl., 53]. But we believe the rule that we have adopted, and the one which was likewise adopted by the chancellor, is more in accord with the authorities generally, and it certainly more fully meets the demands of common justice in the distribution of the insolvent estate.

The second question presented arises out of the special demurrer of Reddick to the jurisdiction of the Jefferson circuit court. Reddick was a borrowing member, and a resident of McCracken county, when he and his wife executed a mortgage on lands in that county to the association, to secure it in the sum of $800. He appeared in answer to process on an amended petition, and questioned the jurisdiction of the court to sell his lands situated in a different county. His demurrer was overruled.

Section 62 of the Civil Code of Practice provides that "actions must be brought in the county in which the subject of the action, or some part thereof, is situated, . . . (3) for the sale of real property under a mortgage, lien or other encumbrance or charge except for debts of a decedent." Except for the peculiar relation the borrowing member in these associations sustains to the corporation and his fellow members, we suppose no difficulty could have arisen in the mind of the chancellor as to the application of the section of the Code quoted to the case in hand.

However, whatever may be said of this relation, we have here a plain suit by the corporation against its debtor to sell the mortgaged property to satisfy a debt due the corporation, and it comes within the very letter of the statute, making it a local action. It is also in accord with the common law, which made actions *in rem*

local, and fixed their jurisdiction where the property sought to be subjected was situated. If the corporation was the owner of the property, a different rule would apply; the court having jurisdiction of the settlement of the assigned estate would necessarily have jurisdiction to sell the property assigned. But the mortgage was a mere security for the debt, and passed no title to the corporation.

In Mechanics' Trust Co. v. Cobb 14 Ky. L. R., 444, [20 S. W., 391], relied on by appellees, the mortgaged property belonged to the insolvent corporation, as we understand the facts stated in the opinion; and, although it was not situated in Jefferson county, the circuit court was held to have jurisdiction to sell it to protect creditors, stockholders or partners.

So, in Fishback v. Green, 87 Ky., 107, [7 S. W., 881]—another case relied on by appellees—the action was one to settle an insolvent estate; and it was held that the court where the action was pending might sell land belonging to the insolvent, although it was situated in another county.

The case of Webb v. Wright, 2 Bush, 126, is also relied on by appellees. But that was a suit by Wright against his former partner for indemnity against a firm debt, and it appeared that certain real property in a different county was in lien for the partnership debts. In the suit between the partners, the property under lien was within reach of the chancellor, and its sale was necessary to effectuate his decree of settlement between them. These facts not appearing in the case on its first appeal (1 Bush, 107), the jurisdiction was properly denied. It is apparent that Reddick was not a necessary party to the suit, although he, as well as all stockholders, might have been

proper parties. Whether in person before the court or not, they were bound by its decrees, because they were represented by the corporate body. Calloway v. Glenn, Trustee, 20 Ky. L. R., 1447, [49 S. W., 440].

The suit, we are to notice, is not against the stockholders for unpaid subscriptions, as there can be no enforcible liability of that kind in these associations. We must look at the transaction between the borrowing member and the corporation as simply a loan of money, and must therefore regard the suit to enforce the lien as a local action, and as coming within the provisions of the Code already quoted.

The third question, also presented by Reddick, involves the amount of credit to which he is entitled in the suit on the mortgage. He borrowed the sum of $1,700 on April 4, 1893; and, for the purpose solely of qualifying him to borrow, he became a stockholder in the association, and subscribed for twenty shares of the stock. He has paid monthly some $29 from the time he borrowed the money until the date of the assignment; in all about $1,330. Of this sum, $780 were for interest and premium, and about $550 were payments on his stock. At the date of the assignment, however, the stock stood on the book of the association as of the value of $620; the difference, it is said, being the dividends credited on his stock.

On the plan of settlement adopted in the Simpson case, 19 Ky. L. R., 1171, [41 S. W., 570 and 42 S. W., 834], and contended for here by Reddick, the sum due on the mortgage would be the result after charging him with the sum borrowed, with legal interest, and crediting him with all payments; including, therefore, payments made as interest and premiums as well as those made as dues on his stock; the calculation being made on the principle of

partial payments. This plan would result in rejecting the association's proffered credit of dividends, and, properly so, because the member has repudiated the contract under which the profits were distributed to his stock. But while, in the Simpson case, there was no suggestion of expense in administering the affairs of the concern, the fact that every share was chargeable with its proportionate part of the ordinary expenses of conducting the affairs of the company was recognized, if not distinctly asserted. When the borrower was credited in these going concerns with only his actual payments of interest, premiums and dues, he was not being permitted to escape altogether payment of his share of the running expenses. He was allowed only six per cent. per annum interest on his payments, whereas his money had probably earned, by the system of compounding the interest, a larger per centum. But when, from any cause, the association ceases to be a "going concern," and especially if it becomes an insolvent one, a different plan of settlement is necessitated.

That plan is foreshadowed in Rogers v. Rains, 100 Ky., 295, [38 S. W., 483], where it was held that the receiver of a Tennessee association then in process of settlement in the courts of that State might collect the sum borrowed, with six per cent. interest, less all payments made as interest and premiums, but that, as it was impossible for the Kentucky court to determine the value of the stock, no credit could be given for payments made thereon.

The true principle is that the stock of each stockholder is burdened with its share of expenses and losses. But in going concerns it is estimated that the member's stock is at least worth what he paid on it; and whatever more it may be worth is forfeited for expenses. In insolvent

concerns it is to be assumed that there has been an impairment of the capital stock, growing out of losses in the conduct of the business, and the value of the stock can be determined only when the losses are ascertained and the funds ready for distribution.

So that the plan adopted in the Simpson case and other cases of going concerns can not be pursued here.

That the rule with respect to credits on stock payments in going concerns is different from that in the settlement of insolvent associations and those in process of liquidation is supported by abundant authority. Hale v. Cairns, Cent. Law J. of Feb. 24, 1899, (N. D., Nov., 1898) [77 N. W., 1010], and cases cited.

In Williams v. Maxwell, (N. C.), [31 S. E., 821], it was held that on the insolvency of the association a borrowing member should be charged with the amount borrowed, plus six per cent. interest, less the whole amount paid to the association on any and all accounts, plus his *pro rata* part of the defalcation account of the association.

See, also, Strauss' case, 117 N. C., 314, [53 Am. St. Rep., 585; 23 S. E., 450]; Price v. Kendall, (Tex. Civ. App..), [36 S. W., 810]; Brown v. Archer, 1 Mo. App., 465; Weir v. Granite St. Prov. Association, (N. J. Ch.), [38 Atl., 643].

The only question on this branch of the case is whether there is enough before the chancellor to approximate the value of the stock. It is clear that no answer universal in its application can be given to this question. It must depend on the character and division of the assets, and the probable losses in converting the securities of the concern into money. It will be conceded that if, after making a liberal discount on the paid-up value of the stock to meet the expenses and losses of winding up the concern, an approximate value can be fixed, which each member would receive on final distribution, it ought to be done.

Vol. 106]        JANUARY TERM, 1899.        **113**

Reddick, &c., v. The United States Building & Loan Assn.'s Assignee.

In Endl. Bldg. Ass'ns, (2d Ed.), section 531, it is said: "There can, however, ordinarily be no reason why he (the borrowing member) should be put to the inconvenience of paying down the whole amount of his debt, without any credit for his stock payments, and relegated to a distribution of the corporate assets in order to get back what he might in the first instance have been permitted to retain. In general, the only effect of such rule, besides the distinct hardship upon the borrower, will be to swell the amounts passing through the receiver's hands, to complicate the accounts and the distribution, and thereby to increase the expenses of the settlement," etc.

"There can be no difficulty," continues the learned author, "in determining, or at least approximating, what receipts, profits and losses have been, what its liabilities are, and what is the value of every share of stock presently held advanced or unadvanced in it, and how much every member must lose upon every dollar paid in by him upon his stock, making a proper allowance for the expenses of settlement."

This rule was not approved or followed in the Rogers-Raines case for the reasons there given. Still, when possible of application, it should be adopted. It must, of course, be of limited application. In the first place, the court only in which the action of the receiver, or of the assignee for the benefit of the creditors, is pending, can determine even approximately the value of the stock. This is so in the very nature of things.

No other court can have knowledge of the facts necessary to be known before an attempt at such valuation can be made. And, if this knowledge might be obtained, yet if courts .other than the one having jurisdiction of the settlement case undertook to fix such value, the

[8]

amounts so fixed might and likely would be different in the different counties, when it is, of course, absolutely necessary that the value fixed should be uniform. In the second place, as we have already indicated, the rule can be followed only where the extent of the losses and expenses of the settlement can be so surely estimated as to render it safe to fix an approximate value on the stock. And this must be left, in a large measure, to the sound judgment of the chancellor, having the whole case before him.

In the case before us the agreed facts are that at the date of the assignment the liabilities of the association to its stockholders, including an indebtedness of $3,000 to outsiders, amounted to the sum of $568,250, while its assets, as shown by its books, when purged of all usury, footed up $479,995. These assets consisted of loans to its members, and, according to the statement of agreed facts, secured either by mortgages upon real estate or by stock of the company. To what extent loans were secured by stock of the company, we do not know. If there have been such loans, their amount and extent ought to have been shown; and it seems to us, also, that there ought to have been some proof, in a general way at least, as to the value of these securities.

The assignee expresses "an unwillingness to take the responsibility of fixing a value on the stock, or allowing any credit therefor on the loans." Unless, therefore, the borrowing members are sufficiently interested to make it reasonably certain by proof that such a value may be fixed, it can not be done. In view of the meager statements in the record before us, we can not say the chancellor was authorized to fix any approximate value on the stock **for** which the credit may be given the borrower.

There may be some other questions of minor importance presented in the pleadings, but no others are argued by counsel. On the appeal of Stofer, the judgment below is affirmed; on that of Reddick and wife it is reversed for further proceedings not inconsistent with this opinion.