CASE 28—ACTION BY MRS. WILLS AGAINST THE PADUCAH BUILDING
& LOAN ASSOCIATION FOR THE CANCELLATION OF A MORTGAGE, CON-
SOLIDATED WITH AN ACTION BY THE ASSIGNEE OF LOAN ASSOCIA-
TION FOR A SETTLEMENT OF THE ASSIGNED ESTATE.

# Wills v. Paducah Building & Loan Ass'n.

## APPEAL FROM M'CRACKEN CIRCUIT COURT.

JUDGMENT REFUSING TO CANCEL MORTGAGE AND MRS. WILLS APPEALS.
AFFIRMED.

BUILDING AND LOAN ASSOCIATIONS—RIGHTS OF BORROWING STOCK-
HOLDER—CREDIT BY PAYMENTS ON STOCK.

Held: A borrowing stockholder of an insolvent building and
loan association, which had made an assignment for the benefit
of creditors, was not entitled to credit on her loan for the
amount of dues paid on her stock, though she had, before the
assignment was made, ceased to pay, and had filed suit seeking
to have all her payments applied to the discharge of her debt
as the association had been insolvent for some time before she
quit paying, and had been endeavoring to wind up its affairs,
with a view to liquidation.

HENDRICK & MILLER, FOR APPELLANT.

This record shows that Mrs. Wills subscribed for three shares
of stock in the Paducah Building & Loan Association, April 3,
1891, and on August 25, 1891, borrowed from said association,
$450, and executed her note for $600.

It is alleged in her petition and not denied that she paid
three dollars per month for the five months of April, May,
June, July and August, prior to receiving the loan, and begin-
ning with September she paid six dollars per month to March,
1899, making in all $561 paid in monthly installments by her,
and applying all these payments at the dates they were made,
she has overpaid said note; and on August 18, 1899, she filed
her suit in the McCracken circuit court against said associa-
tion, asking that they be so applied; charging that the whole
scheme followed by said association was a device to avoid the
usury laws of this State. *When this suit was brought the ap-
pellee was still a going concern.*

The only defense sought to be made by the trustee was that

Wills v. Paducah Building & Loan Association.

the association had become bankrupt and made an assignment; and, disallowing a credit for the stock dues the note was still unsatisfied, and it was sought to enforce the mortgage to satisfy the unpaid balance.

Our contention is, that having filed her petition nearly three months before the assignment of the association, and demanded her note, claiming the benefit of the interest laws of the State, and repudiated all obligation as a member of the company and disclaiming any interest as a member thereof, had thereby ceased to be a member of or stockholder therein, and was entitled to have her payments applied to the extinguishment of her note.

*We confidently assert that no Kentucky decision can be found in which it is authoritatively held that a party, who, prior to an assignment of an association or while it is a "going concern," has paid into the association in stock dues, premiums and interest, a sum sufficient to satisfy his note and mortgage given to secure his loan, and then ceased to pay. and demanded the application of these payments to the satisfaction of his note, may be denied this right—made to submit to a sale of his property to satisfy the lien, while his stock dues are retained by the association or its assignee or receiver appointed after he made his election to forfeit his stock and dividends therein.*

### AUTHORITIES CITED.

Peoples' Sav. & Bldg. Assn. v. Denton, 21 R., 148; N. B. & L. A. v. Bybee, 21 R., 1021; U. S. B. & L. Assn. v. U. S. B. & A., 21 Ky., 1763; Savings B. & L. Assn. v. Montjoy, 21 Ky., 1189; U. S. B. & L. Assn. Assignee v. Casseday, 22 R., 726; N. B. & L. A. v. Glover, 22 R., 535; Saturday Nights Savings & L. Assn. v. Moore, 22 R., 766; Reddick Case, 19 R., 1171; U. S. B. & L. Assn.'s Assignee v. Reid, 22 R., 342.

GREER & REED, FOR APPELLEE.

The assignee in his answer herein denies that the payments set up in plaintiff's petition were all paid on said loan, but as the loan was for $450, the first three payments were made on the stock before the loan was made, and of the six dollars monthly payments, only three dollars per month thereof during all of the time was ever paid on the loan and the other three dollars was paid on the monthly dues of the three shares of stock owned by plaintiff, and said answer charges that there is a balance of $327.43 due on the note and mortgage of plaintiff.

The record in this case shows that Mrs. Wills is allowed her stock claim for more than it actually was and she is given more interest on it than she is entitled to.

## AUTHORITIES CITED.

Rogers v. Raines, 18 R., 769; Reddick Case, 20 R., 1720; Globe Bldg. & Loan Assn. v. Wood, &c., 22 R. 1500; U. S. Bldg. & Loan Assn., &c. v. Rowland, &c., 22 R., 1433.

OPINION OF THE COURT BY JUDGE HOBSON—AFFIRMING.

On April 3, 1891, appellant subscribed for three shares of stock in the Paducah Building & Loan Association, of $200 per share, face value.  She paid on this stock $3.65 for the month of April, and $3 each for the months of May, June, July, and August.  On August 25, 1891, she borrowed from the association $450, and executed her note to it for $600. From this time she paid, in addition to the $3 a month on the stock as before, $3 a month interest on her loan, until and including March, 1899: making 91 payments, of $6 each, in addition to the $15.65 paid on the stock before she obtained the loan.  After March, 1899, she ceased to pay.  On August 18, 1899, she filed this suit against the association, in which she charged that the arrangement was usurious, and sought to have all her payments applied to the discharge of her debt, alleging that they more than paid the debt. She prayed judgment for the cancellation of the mortgage she had executed to secure the note, and for the recovery of $87.58 as usury which she alleged she had paid over and above the amount of the debt.  The association filed a general demurrer to her petition, but no action was taken on the demurrer.  In October, 1899, the association made an assignment for the benefit of its creditors, and the assignee was made a defendant to the action.  He also filed an action to settle the trust, and the two suits were consolidated. The proof showed that the association was organized about the year 1888; that it had 17 non-borrowing stockholders and 12 borrowing stockholders; that the non-borrowing stockholders, who held about two-thirds of the capital stock,

had paid in about $4,000, and the borrowing stockholders had paid in about $3,000. It also appeared that, if all the borrowing stockholders were settled with on the basis claimed by appellee, there would only be between $900 and $1,000 of assets to come to the hands of the assignee; all of its money having been let out to its borrowing members. The company had been insolvent for some time before appellant quit paying, and had been endeavoring to wind up its affairs, with a view to liquidation. Under these facts the circuit court held that appellant was entitled to credit on her mortgage debt for the monthly payments of $3 each which she had paid on it, but that she was not entitled to credit on this debt, as against the insolvent association, for the $3 a month which she had paid on the stock. The court allowed her to retain in her hands 25 per cent. of the judgment against her, on the ground that, as she was a stockholder, this much would probably be coming to her on the settlement of the stock account. From this judgment she appeals, insisting that she should have been credited on her mortgage debt by all the money that she had paid.

It is earnestly argued for appellant that she had chosen to cease, and had ceased, to make further payments on her stock some eight months before the assignment by the association to appellee, and that three months before the assignment she had filed her suit to cancel the mortgage, and to recover part of the money she had paid, thereby disclaiming any interest in the association as a member, and demanding the benefit of the usury laws of the State; that thereby her rights were fixed; and that thereafter the association could not, by making an assignment, divest her of rights which by her election she had already acquired. In Reddick v. Association's Assignee 106 Ky., 94, 20 R., 1720, (49 S. W., 1075), this court said: "But looking beyond the

mere language of the by-laws and the statutes, it is manifest
that these withdrawal contracts are provided for with re-
spect to going concerns only.   The right of withdrawal is
not an absolute one, any more than is the right of the bor-
rowing member to pay his loan by monthly payments until
the maturity of his stock cancels his loan.   Ordinarily the
language of the borrower's contract does not attempt to
fix the date of this maturity.   He simply agrees to pay un-
til the accumulations of the enterprise shall mature his
stock.   .  .  .   And these terms all come to nothing when
the scheme falls through.   The chancellor can not carry on
the enterprise when the parties themselves have failed, and
the only thing possible is to wind it up on equitable princi-
ples."   Following this case, the rule has been established
that the insolvency of the association negatives the right of
any stockholder to obtain a priority over his fellows by giv-
ing notice of withdrawal, and that in an insolvent concern a
borrowing stockholder is not entitled to credit on his loan
for the amount of dues paid on his stock, although the rule
is otherwise in a going concern.   Association's Assignee v.
Reed 110 Ky., 874, 23 R., 342, (62 S. W., 1020); Loan Co.'s
Assignee v. Spillman 23 R., 1431, (65 S. W., 444).   Though
none of the cases decided presented just the question raised
here, the principles announced control it.   While appellant
was a borrower from the association, she was also a stock-
holder.   Her right to apply on her debt what was paid on
the stock is only allowed in a going concern on the ground
that in such cases the dividends on the stock are presumed
to equal her share of the expenses and losses.   But in an
insolvent concern this presumption can not exist.   The
rights of the parties in the assets of the insolvent concern
must be determined upon equitable principles, when the as-
sets assigned for the benefit of all the creditors are dis-

tributed by the chancellor.  The borrowing member, who before the assignment elected to get out, can, in the nature of the case, stand in no better light than any other member who before the assignment gave notice of withdrawal and demanded his money.  For both had the same right of election, and the election of one of the members in a mutual concern can not have any greater effect than the election of another member, in the distribution of the assets of the insolvent concern which have come under the control of a court of chancery, and must, like the assets of any other trust, be administered on equitable principles.  The proof shows here that the association was insolvent in March, when appellant ceased to pay, and had been for some time before that.  The stockholders in the association had contributed the assets which it had.  To permit one class of stockholders, who had borrowed these assets, to apply them to the payment of their debts, and throw the entire loss on the other stockholders, would be to violate the fundamental principle that equality is equity.  We are therefore of opinion that the learned circuit judge properly ruled that appellant was not entitled to credit on her debt for the amount she had paid as dues on the stock.  The answer of the assignee to appellant's suit, taken in connection with the petition, set out, all the facts, and the amount of the debt of appellant was a mere matter of calculation on these facts.

On the whole case, we see no error in the judgment to the substantial prejudice of appellant, and the judgment is therefore affirmed.