• CASE 43—PETITION EQUITY—DECEMBER 17.

## Rogers, Receiver v. Rains.

### APPEAL FROM MARION CIRCUIT COURT.

100  295
106  111

100  295
e107  476

100  295
109  740
e109  743
109  744

100  295
110  877

100  295
112  627

1. CONTRACT FOR ATTORNEY'S FEE—COMITY BETWEEN STATES.—The
general rule of comity between States, which gives effect to con-
tracts beyond the limits of the State where they are made, does
not embrace or apply to contracts which are immoral or unjust,
or to such as the enforcement of which in another State would be
injurious to the rights, interests, or convenience of that State
or its citizens. In this case it is held that a contract in a note
which was payable in Tennessee, to pay an attorney's fee if
suit had to be brought on it, is not enforceable in the courts of
this State, although it was authorized by and enforceable under
the laws of Tennessee.

2. INSOLVENT BUILDING AND LOAN ASSOCIATION—DEBTOR WHO IS
STOCKHOLDER THEREIN—SET-OFF.—In a suit by a receiver of an
insolvent building and loan association against a debtor of the as-
sociation who is also a stockholder therein, the defendant is not

entitled to have set-off against his debt the amount of the dues which he has paid on his stock.

JESSE L. ROGERS FOR APPELLANT.

1. The law of the place of the performance of the contract will govern the courts in giving the remedy upon the contract, even though the security for the debt may be located in a State other than the one in which the debt is to be paid. The note was payable in Tennessee and the agreement to pay an attorney's fee is enforceable in that State. (Morawetz on Private Corporations, sec. 988; De Wolf v. Johnson, 10 Wheaton, 367; 14 Lea, 677.)

2. In the winding up of an insolvent building and loan association, a debtor to the corporation who is also a stockholder therein, can not off-set the amount paid in by him on his stock against his debt. (Rogers v. Hargo, 92 Tenn., 35.)

H. P. COOPER FOR APPELLEE.

1. The agreed facts show that the money borrowed was not to be paid in any other way than by the stock when it matured; and that the defendant had the right to retain the loan until the same was cancelled by the monthly payments and the profits of the association.

JUDGE DU RELLE DELIVERED THE OPINION OF THE COURT.

The New South Building and Loan Association was a Tennessee corporation, having its place of business at Cumberland Gap, Tennessee. In October, 1891, the appellant was, by the Chancery Court of Claiborne county, Tennessee, appointed Receiver of the business and property of the Company and qualified as such. By decree in the cause in which appellant was appointed, entered in March 1892, the Corporation was dissolved upon the ground that it was insolvent, and its business was directed to be wound up and settled. It appears that all stockholders in the company were either parties plaintiff or defendant in the cause.

Rogers, Receiver, v. Rains.

The appellant thereupon instituted suit upon a note executed by appellee to the Company, which came into his hands among the assets of the Corporation, dated June 1st, 1890, for one thousand dollars, with five per cent. interest and five per cent. premiums per annum and payable on or before seven years from date, with a proviso precipitating the maturity of the principal upon default for six months in payment of interest or premium. The note was secured by mortgage on appellee's land in Marion County and by pledge of stock held by him in the Company. The mortgage provided further for the payment of a reasonable attorney's fee in the event the indebtedness should be collected by suit. The appellee had subscribed May 1st, 1890, for fourteen shares of the stock of the Company, the subscription being for monthly payments of eighty cents per share until the stock should be paid up and matured, and on the maturity of the stock, which, it was estimated would occur in about seven years, the shareholder, who was a borrower, would be entitled to have the amount of his loan deducted from the face value of the stock, and be paid the difference in cash. Appellee had paid dues on his stock up to June 16th, 1891, and interest and premium on his loan to the same date. The petition sought the recovery of the thousand dollars, subject to credits by the amounts paid as interest and premium on the loan, and of an attorney's fee of ten per cent. on the amount due.

By amended petition it was averred that the Company was a Tennessee Corporation having its principal place

of business in that State, that the note was payable
there, the note and mortgage were there delivered and
accepted, and that the laws of that State allowed the
collection of an attorney's fee when contracted for.
Appellee pleaded a set off of the value of certain paid
up stock held by him, mistake in the drawing of the
mortgage, and that the contract entered into by him
was that the note was to be paid by the maturing of the
stock and in no other way, and prayed that the note be
credited by the dues paid on his stock as well as the in-
terest and premium and for damages for breach of
contract.

By an agreement filed in the cause, it is established
that the note and mortgage were executed at Lebanon,
Kentucky, but the note was payable in Tennessee, that
the laws of Tennessee authorize and enforce contracts
for the payment of reasonable attorney's fees in such
cases, that appellee subscribed for his stock for the sole
purpose of securing a loan of a thousand dollars from
the Company, and having secured it executed the note
and mortgage sued on, that at the time he secured the
loan it was estimated that his stock would mature and
be worth par in seven years, at which time the Company
would owe him fourteen hundred dollars on his stock,
which would cancel his loan and entitle him to four
hundred dollars in cash; and that he contracted to pay
eleven dollars and twenty cents per month on his stock,
and the interest and premium on his loan until his pay-
ments, with the profits of the Company, should make
his stock worth par, whether this was for a longer or

shorter period than seven years; that he "had a right to retain the loan until the same was cancelled by the said monthly payments and profits of the association"; that the dues payable on the stock were $11.20 per month and the interest and premium were $8.34 per month. The amount of payments by appellee on each account was agreed, and that he had not been in default in payment for a period of six months before either the insolvency of the Association or the appointment of the receiver, but had been in default for more than six' months at the time of the decree of dissolution; and that he ceased payment because he believed in July 1891 that the Association was insolvent and was misappropriating the funds.

The Circuit Court decreed a reformation of the note and mortgage as prayed for in the answer.    This is immaterial, as there seems to be a general consensus of authority "that upon premature dissolution of the association, the advanced members may be compelled to pay forthwith the balances due from them on their securities, although the latter be given in terms only for the payment of installments."    Endlich on Building Associations, 2nd. Ed. No. 523.

The Circuit Court gave judgment foreclosing the mortgage, allowing credits on the note not only for the amount paid as interest and premiums, but also for the amounts paid as dues on the stock.    The judgment denied the attorney's fees prayed by appellant.

Although appellee prayed a cross appeal, he appears in this court asking an affirmance. The appeal there-

fore presents but two questions for decision. First, whether the contract for attorneys fee, which was valid according to the laws of the State where contract was by its terms to be performed, is enforcible in this state. This question has been recently decided by this court in the negative.

It was held in the case of Clark v. Tanner, *ante*, 275, that the general rule of comity giving effect to contracts beyond the limits of the State where made, does not embrace contracts like the one in question. Such contracts come within recognized exceptions to the general doctrine. Those exceptions, as said by Justice Martin in Whitson vs. Stodder, 8 Mart. (La.) 95 apply to cases in which the contract is immoral, or unjust, or in which the enforcing of it in a State would be injurious to the rights, the interest or convenience of such State or its citizens". And as said by this court in Witherspoon vs. Musselman, 14 Bush 214, of such contracts for the payment of attorney's fees: "They are agreements to pay penalties, tend to oppression of the debtor and to encourage litigation." There was therefore no error by the lower court upon this point.

The second question is whether the sums paid as dues on stock subscriptions are proper credits upon the mortgage debt, or whether those payments should stand to his credit until time for final settlement, when all share holders, borrowers as well as non-borrowers, will be paid pro rata from the fund for distribution, it being conceded that the payments of interest and premiums

were properly credited upon the debt.    Mr. Endlich in
his work on Building Associatiɔns, in the latter part of
section 523 (2nd. Ed.) thus states the doctrine contended
for by appellee.    "In one class of decisions it has been
declared that the borrower is to be charged only with
the amount he has actually received, with legal interest
and credited with all his payments, *upon stock and in-
terest* upon the principal of partial payments."    Quite
a number of authorities sustain this view,but on this
question we concur with the courts of Pennsylvania and
Tennessee, and Mr. Endlich in summing up the effect
of the authorities, in section 531, concurs in the reason-
ing of those courts, while he contends for a qualified ap-
plication of it.    He says (p. 530) "It must be true there-
fore that the basis of the borrower's indebtedness is to
be taken to be the amount of money actually passing
into his hands, with legal interest thereon.    *But it can
not be true that he is to be allowed as deductions therefrom
all that he has paid into the society.*    That would be over-
looking his duty as a member to contribute to the
losses and expenses of the common enterprise.    What
he has paid as interest is to be allowed him as paid
upon interest.    If he has paid interest upon the pre-
mium bid by him, he has overpaid his interest, and the
excess ought to go in reduction of his debt.    And upon
it he is entitled (by reason of his right to apply, if he
chooses, his stock payments to the reduction of his
debt) to a further credit for whatever his shares are
worth, i. e. for his proportion of the assets of the asso-
ciation at the same rate per share as the shares of un-

advanced members.    The balance remaining upon his
indebtedness he is bound to discharge in cash."    Mr.
Endlich then goes on to argue that the value of the
stock of such an association, when in the hands of a re-
ceiver, under the supervision and control of a court of
Equity, can be readily ascertained, or at least approxi-
mated, and the advanced share holder given the benefit
immediately by way of credit on his debt, of a part at
least, of the value of his stock, an estimated proportion
thereof being reserved to cover losses and expense of
liquidation, and the surplus if any remaining to be paid
him on final distribution.    But we apprehend that the
procedure suggested by Mr. Endlich, and which does
not appear to have been approved by the Courts, would
prove dangerous in actual practice.    Oversanguine re-
ceivers would put too high an estimate upon the value
of the Association's assets and too low an estimate on
the probable losses and expenses, with the result of a
loss to the unadvanced members, and a proportionate
gain to the advanced members.    Moreover it would be
extremely difficult of application in a case like the one
at bar, where the member's debt is collected through
the forums of a different sovereignty from that under
which the receiver was appointed.    We are of opinion
that the true rule is laid down in the case of Rogers vs.
Hargo, decided by the Supreme Court of Tennessee, in
considering a question arising out of the same receiver-
ship involved in this case.    The court in that case (92
Tenn. 38) quoted as follows from Stroken vs. Franklin
Saving Fund and Loan Association, decided by the Su-

preme Court of Pennsylvania in 1887 (Atlantic Report-
er, vol. 8 p. 843): "The insolvency of the Company
as before observed, puts an end to its operations as a
building association.   To a certain extent it also ends
the contract between it and its members respectively,
and nothing remains but to wind it up in such a manner
as to do equity to creditors and between the members
themselves.   As regards the latter, care should be
taken to adjust the burdens equally and not to throw
upon either borrower or non-borrower more than their
respective share.   That result may be reached by re-
quiring the borrower to re-pay what he actually re-
ceived with interest.   He would then be entitled, after
the debts of the Corporation are paid, to a pro rata divi-
dend with the non-borrower for what he had paid on
his stock.   He will thus be obliged to bear his proper
share of the losses.   To allow him to credit upon his
mortgage his payments on his stock would enable him
to escape responsibility for his share of the losses, and
throw them wholly upon the non-borrower.   In other
words, the borrower would escape without loss.   It
will not do to administer the affairs of an insolvent Cor-
poration in this manner."

The Tennessee Court commenting upon the opinion
quoted, said, "The reasoning of the court, as there given
fully indicated the conclusion reached.   To our minds
it seems unanswerable.   Without further discussion or
elaboration, we are content to adopt and follow the de-
cision of the Pennsylvania Court.   Charge defendant
with money actually received by him, treating same as

due and drawing interest from time received: and credit him thereon by payments of interest and premiums: when made. Ascertain balance due, making calculation upon the principle of partial payments, and give recovery for such balance. Let amount paid by defendant as dues on stock stand to his credit on the books of the Corporation until time for final adjustment, when he and all other stockholders, borrowers and non-borrowers, will be paid pro rata from the fund for ultimate distribution. Thus the loss will be apportioned equally."

In this conclusion we fully concur.

Wherefore the judgment is affirmed on the cross appeal and reversed on the original appeal with directions to enter a judgment in accordance with the principles of this opinion.