## COLUMBIA FINANCE AND TRUST COMPANY, ASSIGNEE
### v. THARP.

[No. 2,912.   Filed February 13, 1900.]

BUILDING AND LOAN ASSOCIATIONS.—*Insolvent Associations.*—*Assignees.*—Under the act of 1897 (Acts 1897, p. 284) the assignee of an insolvent foreign building and loan association may maintain any action necessary to wind up the affairs of the association, although the association had not complied with the laws of the State respecting its admission to do business therein.  *pp. 83, 84.*

SAME.—*Insolvent Associations.*—*Borrowers.*—*Set-Off.*—A member of an insolvent building and loan association cannot set off the amount he had paid as dues against the amount he owes as a borrower. *pp. 84-86.*

SAME.—*Insolvent Associations.*—*Borrowers.*—*Set-Off.*—In a suit by an insolvent building and loan association against a borrower, the borrower may set off against the debt an amount due him from the association for legal services.  *p. 87.*

From the Daviess Circuit Court.   *Reversed.*

*J. C. Billheimer, J. Downey, W. T. Mahan, J. S. Duncan, C. W. Smith, H. H. Hornbrook* and *A. P. Smith,* for appellant.·

*C. K. Tharp, M. S. Hastings, J. G. Allen* and *E. E. Hastings,* for appellee.

ROBINSON, J.—In 1890 the United States Building and Loan Association was organized under the laws of Kentucky. On May 15, 1891, appellee took ten shares of instalment stock, on which, up to January 1, 1897, he had paid in dues $402.   January 22, 1897, he gave the withdrawal notice provided in the by-laws, which notice matured February 22, 1897.   As a withdrawing member he was entitled to $112.22 interest.   Dividends had been declared on his stock amounting to $101.44.   Prior to his withdrawal, the association was indebted to him $157.50 for services as the attorney of the association.   None of these sums was ever paid.   In December, 1896, appellee borrowed $300 from the association, gave his note, and deposited, without written

indorsement, as collateral, his certificate for stock. February 24, 1897, the association made an assignment, for the benefit of creditors, to the Columbia Finance and Trust Company, a Kentucky corporation. At that time the association had no cash assets, its bank account was overdrawn $714.06, and its assets of every kind and species of property amounted to $479,995.82, and its liabilities to $568,-250.98. The deed of trust was recorded in Jefferson county, Kentucky, February 27, 1897, and in Daviess county, Indiana, in March, 1897.

In November, 1897, the assignee sued on the note. Issues were formed on the pleadings, including set-off and cross-complaint by appellee, who also sued out attachment against certain real estate in Daviess county which belonged to the association, and which, it was claimed, had not passed by the assignment. The court found that at the date of the assignment, February 24, 1897, there was due the association on the note $303.40; and there was due appellee $157.50 for services, and $514.22, the withdrawal value of his stock. Conclusions of law were stated in appellee's favor on the issues joined on the complaint as well as on the cross-complaint, and that there was due appellee $361.25. Judgment was rendered accordingly; also sustaining the attachment and ordering the real estate sold. The court found that the association never qualified to do business as a foreign building and loan association under the act of March 3, 1893, and after that act went into effect it ceased to do business in this State, but continued to receive dues on stock theretofore held by Indiana members.

Counsel have not questioned the right of the assignee to bring any suit necessary to wind up the affairs of the association, and we think there can be no doubt of this right under section ten of the act of March 8, 1897 (Acts 1897, p. 284), which provides: "That where a foreign building and loan association doing business within this State has become insolvent, and its affairs are being wound

up by a receiver, the failure of such association to have complied with the laws of the State representing [respecting] its admission to do business therein shall not affect the right of such receiver to bring any suit necessary to wind up the affairs of such association." It will be noticed that the section uses the word "receiver," but the manifest intention of the legislature was to give a right to maintain any action necessary to wind up the trust where such an association had become insolvent and its affairs had passed into the hands of some officer under the direction of a court having jurisdiction of the insolvency proceedings. The reason and the object of the statute are to afford relief to creditors of an insolvent association by enabling them to share in assets which may consist of contracts with residents of this State. In *State Board, etc., v. Holliday*, 150 Ind. 216, 42 L. R. A. 826, it is said: "In order to ascertain the intention of the legislature the court should look to the letter of the statute, to it as a whole, to the circumstances under which it was enacted, to the old law, if any, to the mischief to be remedied, to other statutes, to the rules of the common law and to the condition of affairs when the statute was enacted." See, also, *Parvin v. Wimberg*, 130 Ind. 561, 15 L. R. A. 775; *Wheatley v. Romack*, 124 Ind. 430; *Hunt v. Lake Shore, etc., R. Co.*, 112 Ind. 69; *Middleton v. Greeson*, 106 Ind. 18; *Stout v. Board, etc.*, 107 Ind. 343; *State v. Canton*, 43 Mo. 48; *Ragland v. Justices*, 10 Ga. 65; *State v. Justices*, 41 Mo. 254; *Simonton v. Barrell*, 21 Wend. 362; *Brown v. Pendergast*, 7 Allen 427.

It is not necessary to decide whether appellee could withdraw his stock while pledged for a loan, although the loan was much less than the value of his stock, because, until the money was paid and the stock canceled, he continued to be a stockholder. The fact that a stockholder has an order for the withdrawal value of his stock when the association becomes insolvent does not make his claim any more meritorious than that of any other stockholder. *Christian's*

*Appeal*, 102 Pa. St. 184; *Heggie* v. *People's, etc., Assn.*, 107 N. C. 581, 12 S. E. 275; Endlich Bldg. Assns. (2nd ed.), §514. The order prescribed by the by-laws for paying out money to stockholders in the regular course of business does not apply after an assignment. The association owed appellee a certain amount on his stock, but his claim for that sum was as a stockholder, and not as a creditor. Endlich Bldg. Assns. (2nd ed.), §515.

When the association turned over its affairs to the assignee, it was the assignee's duty to wind up the affairs of the institution. The business of the association then ceased. All contracts matured. Nothing remained but liquidation. The assignment was for the benefit of creditors, not the members. The object is to wind up the affairs in such a manner as to do equity to creditors and among stockholders themselves. Appellee was still a stockholder, and in the final winding up of the association's affairs, if there are losses, he must as a stockholder bear his proportionate share. His rights against a suit on the note by the assignee are not the same as against a suit by the association itself. If in the end he fails to receive the full value of his stock, he will lose because he was a member of the concern, not because he was a creditor. To permit a borrower to set off stock payments against a loan which he has received would be permitting him to throw the whole burden of losses and expenses of the association, and expenses of winding it up, on the non-borrowing members. Equity will not suffer this to be done. The claim of each stockholder is equally meritorious with the claim of every other stockholder.

When the assignee took charge, appellee was a borrowing member. The better reasoned cases are agreed that the borrowing member must pay the assignee the amount of his loan, with interest as contracted, or the legal rate, less certain deductions, but that he is not entitled to credits on the loan for dues paid. The authorities are not agreed as to the deductions that may be made, but it has recently been

held in this State that the only credits permissible are interest and premium payments, thus leaving the dues or stock payments to be subjected to losses and expenses. *Marion Trust Co.* v. *Trustees, etc.*, 153 Ind. 96; *Post* v. *Building, etc., Assn.*, 97 Tenn. 408, 37 S. W. 216, 34 L. R. A. 201; *Appeal of Criswell*, 100 Pa. St. 488; *Rogers* v. *Hargo*, 92 Tenn. 35, 20 S. W. 430; *Leahy* v. *National, etc., Assn.*, 100 Wis. 555, 76 N. W. 625; *Strohen* v. *Franklin, etc., Assn.*, 115 Pa. St. 273, 8 Atl. 843; *Weir* v. *Granite State Assn.*, 56 N. J. Eq. 234, 38 Atl. 643; *Knutson* v. *Northwestern, etc., Assn.*, 67 Minn. 201, 69 N. W. 889; *Rogers* v. *Rains*, 100 Ky. 295, 38 S. W. 483; Thompson Bldg. Assns., p. 396; 4 Am. & Eng. Ency. of Law (2nd ed.), 1081; *Boice* v. *Rabb, Tr., post*, 368; *International, etc., Assn.* v. *Bratton, post*, 654.

There is authority holding that in cases like this, where the affairs of the association are in a court of equity, the value of the stock can be readily ascertained, or at least approximated, and the borrowing member given credit on his debt, of a part, at least, of the value of his stock, an estimated part of the stock being reserved to cover losses and expenses, and the surplus, if any, paid the member on final distribution. Endlich Bldg. Assns. (2nd ed.), §531. Such a rule might perhaps be followed where the suit to collect the amount borrowed and the insolvency proceedings are in the same forum; but it would be difficult, if not impossible, of application where the suit to collect the member's debt is in the court of a different sovereignty from that under which the assignee was appointed, as in the case at bar. Such a rule would not be a safe one in actual practice. *Rogers* v. *Rains, supra; Rogers* v. *Hargo, supra; Strohen* v. *Franklin, etc., Assn., supra.*

As dues or stock payments, after an assignment, can not be credited on a loan by a borrowing member, it follows that the amount appellee had paid as dues, with interest, could not be set off against the amount he owed as a borrower. He

must pay the loan, and these dues or stock payments must stand to his credit until time for final adjustment, when all stockholders, whether borrowers or non-borrowers, will stand upon an equality in the final *pro rata* distribution. The supreme rule of equality and mutuality among those who are then members must control, without reference to the date of issue or maturity of the stock, or withdrawal notices. Endlich Bldg. Assns. (2nd ed.), §514.

As to the amount the association owed appellee for services as attorney of the association, he was a creditor. In the suit by the assignee on the note, appellee could set off that amount, as was done. *Kenner* v. *Whitelock*, 152 Ind. 635.

Upon the facts, appellant is entitled to a judgment for the amount due on the note, less the amount due appellee for services as attorney of the association.

Judgment reversed, with instructions to restate the conclusions of law.