CASE 106—ACTION TO ENFORCE A MORTGAGE LIEN—FEB. 6.

# U. S. Building & Loan Assn.'s Assignee v. Rowland, &c.

### APPEAL FROM M'CRACKEN CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS.    REVERSED.

BUILDING AND LOAN ASSOCIATIONS—INSOLVENCY—RIGHTS OF BORROWING MEMBERS—CREDIT.

Held:    A borrowing member of a building and loan association is not entitled, when his loan has matured by the insolvency of the association, and he is sued thereon by the asignee, to credit by either dues paid on his stock, or dividends declared thereon and not withdrawn by him, as such dues and dividends form part of the stock account, which remains in pledge to meet the expenses and losses of the insolvent concern.

SAM HOUSTON, ATTORNEY FOR APPELLANTS.

In a suit by the assignee of the U. S. Bldg. & Loan Assn. v. Rowland on two notes aggregating $1,250, executed by him for money borrowed from said association before its assignment, the lower court adjudged that the appellees were entitled to credit by the dividends declared on appellee's stock by the U. S. Bldg. & Loan Assn. before the assignment was made. This, we claim, was erroneous.

Vol. 109—47

Appellees in their plea assail the contract under which the dividends were declared, and it is held, in effect, to be usurious and void. By their plea of usury they have refused to be bound by it, and are not entitled to any benefits under it.

### AUTHORITIES CITED.

100 Ky. Rep., Rogers' Receiver v. Rains, pp. 303 and 304; Ky. Law Rep., vol. 20, No. 21; Reddick v. U. S. Bldg. & Loan Assn., p. 1725; 17 B. Mon., Lex. L. F. & M. Ins. Co., &c., v. Page & Richardson, side page, 440; Thompson on Corporations, book 5, sec. 6473; Am. & Eng. Ency. of Law (2d ed.), vol. 3, p. 23, sec. 4, subsec. 3, and decisions there referred to;18 B. Mon., Logan, &c., v. Anderson, &c., side pages 119-20 and 21; 13 Bush, Hibler v. Davis 'Admr., pages 21 and 22; Story's Equity Jurisprudence, vol. 2, secs. 1037-1038 and 1039.

BLOOMFIELD & CRICE, ATTORNEYS FOR APPELLEES.

The only alleged error relied on by the appellants is that the judgment allows appellees credit by dividends declared on R. Rowland's stock prior to the assignment.

It has been the uniform rule of this court to put borrowing and non-borrowing members of an insolvent building and loan association on an equal footing in order that each should be burdened with his share of the expense and losses. We insist that as the non-borrowing and paid-up members received their part of the profits at the time they were declared, and none of them are now charged with any part of the expenses or loss, that the profits of the borrowing member that were declared, received and retained by the association, as in this case, should be credited on the borrowing members' debt, and not now charged with the expenses and losses of the association in order that the borrowing members may have the full benefit of their dividends as the non-borrowing members have had of theirs. Ky. Stats., sec. 869; Schupp v. Thomason, 9 Ky. Law Rep., 360; Story's Equity, sec. 633.

OPINION OF THE COURT BY JUDGE DuRELLE—REVERSING.

Appellee Rowland subscribed at one time for twelve shares, and at another time for five shares, of the stock of the United States Building & Loan Association, for the purpose of qualifying himself to borrow money from it. He borrowed $1,200 at one time, and $250 at another, pledging his seventeen shares of stock as collateral se-

curity, and executed a mortgage to the association upon certain real property. The association became insolvent, and assigned its estate and assets to the appellant trust company. In a suit brought by the assignee against the assignor to administer the trust, in the Jefferson Circuit Court, common pleas division, it appears that the assignee applied to the court for instructions as to the method of collecting the assets, and that the court thereupon instructed the assignee "that all of the mortgage contracts in the hands of said association, and against its borrowing stockholders, and all loans matured upon the date of the assignment, and the acceptance thereof by the plaintiff, that all such contracts and loans the plaintiff will proceed at once to collect; and all such borrowing stockholders shall pay at once to the assignee the amount due upon his or her mortgage or loan, which amount shall be computed as follows: The borrowing stockholder shall be charged with the full amount of the loan, together with six per cent. per annum, payable in monthly rests, up to the date of the assignment. He shall be credited with all payments of interest and premium made as of the date of such payment, and the balance due will be the amount to be paid by such borrowing stockholder, and collected by the assignee; said balance, to bear interest from February 25, 1897, until paid. All dues and stock payments are to be reserved until the distribution of the assets herein, and no credit is to be allowed borrowers therefor until said distribution." The assignee accordingly brought suit upon the mortgages executed by appellees Rowland and wife, and by amendment joined the assignor as a party plaintiff, seeking judgment for the amount of the loan, with interest, subject to credit by the amounts paid from time to time as interest and premium.

The answer of appellees Rowland claimed additional cred-
its, principally for dividends declared upon the stock sub-
scribed for by Rowland.  By an amended answer and cross
petition, it appears that the land was sold by the Row-
lands to Orra and Luella Clark, who conveyed it to one
C. L. Brunson, reserving a purchase-money lien thereon.
By their pleading they prayed that the assignee be re-
quired to exhaust the security of the stock pledged as
collateral before proceeding to sell the land.  As the cir-
cuit court decided against this contention, and the Clarks
appear to have taken no cross appeal, this question need
not be considered.  The circuit court gave judgment in
favor of the appellant, but allowed credits not only for the
amounts paid as interest and premium, but also by the
amounts declared as dividends of Rowland's stock by the
association before the assignment.

The only question presented for decision by the argu-
ment is as to the correctness of this allowance of credit.
All other questions presented by the record have been
settled by the decisions of this court in the building and
loan association cases heretofore decided.  In the case
of Rogers v. Rains, 100 Ky., 299, (38 S. W., 484), the doc-
trine was recognized "that, upon premature dissolution of
the association, the advanced members may be compelled
to pay forthwith the balance due from them on their se-
curities, although the latter be given in terms only for the
payment of installments."  End. Bldg. Ass'ns (2d Ed.)
section 523.  In the same case we quoted with approval
from the opinion of the Supreme Court of Pennsylvania
in Strohen v. Association, 8 Atl., 343, as to the effect of
the insolvency of such an association in ending the con-
tract between it and its members, leaving nothing to be
done but wind it up in such a manner as to do equity

to creditors and between the members themselves.  Said
the Pennsylvania court in the case referred to:  "As re-
gards the latter, care should be taken to adjust the bur-
dens equally, and not to throw upon either borrower or
non-borrower more than their respective share. That re-
sult may be reached by requiring the borrower to repay
what he actually received, with interest.  He would then
be entitled, after the debts of the corporation are paid,
to a pro rata dividend with the non-borrower for what he
had paid on his stock.  He will thus be obliged to bear his
proper share of the losses.  To allow him to credit upon his
mortgage, his payments on his stock would enable him to
escape responsibility for his share of the losses, and throw
them wholly upon the non-borrower.  In other words, the
borrower would escape without loss.  It will not do to ad-
minister the affairs of an insolvent corporation in this
manner."  In the case of Simpson v. Association (Ky.)
11 S. W., 570, (42 S. W., 834), a distinction was made be-
tween the doctrine laid down in the Rains case as applic-
able to an insolvent corporation and the doctrine which
should be applied to "a simple suit by the corporation—
a going concern—to enforce a contract of loan which is
usurious in its very terms."  Said Judge Hazelrigg, re-
sponding to the petition for rehearing:  "There is nothing
whatever to show that there are any losses or taxes or
expenses which the delinquent member should in good con-
science be required in part to bear.  .  .  .  Nor have we
before us a case where the assets of the association in
the hands of a receiver are for distribution by a chancel-
lor.  In such case his duty is clear to protect the interests
of all parties alike."  In Reddick v. Association (Ky.) 49
S. W., 1075, this court, in an opinion by Chief Justice
Hazelrigg, discussing the same propositions with reference

to an insolvent corporation, said: "The right of withdrawal is not an absolute one, any more than is the right of the borrowing member to pay his loan by monthly payments until the maturity of his stock cancels his loan. Ordinarily, the language of the borrower's contract does not attempt to fix the date of this maturity. He simply agrees to pay until the accumulations of the enterprise shall mature his stock. Sometimes, however, there is a fixed and guarantied period of maturity. But in the latter event, no more than in the former, can he rely on the exact terms of his contract; and these terms all come to nothing when the scheme falls through. The chancellor can not carry on the enterprise when the parties themselves have failed, and the only thing possible is to wind it up on equitable principles. As in the one case the borrowing members can not complain of the violation of his contract coming from a precipitation of the maturity of his loan, so in the other the withdrawing member can not say that he has an absolute right to a specific performance of the letter of his contract. Judge Endlich, in his work on building associations, affirms the doctrine 'that the fact of insolvency of an association negatives the right of any one to obtain a priority over his fellows by giving notice of withdrawal,'—citing Appeals of Christians, 102 Pa., 184, and other cases. End. Bldg. Ass'ns (2d Ed.), section 102." Again, in considering the plan to be adopted in allowing credits upon loans in the administration of an insolvent concern, this court held in the case last cited: "On the plan of settlement adopted in the Simpson case (Ky.), 11 S. W., 570, (42 S. W., 834), and contended for here by Reddick, the sum due on the mortgage would be the result, after charging him with the sum borrowed, with legal interest, and crediting him with

all payments, including, therefore, payments made as interest and premiums, as well as those made as dues on his stock; the calculation being made on the principle of partial payments. This plan would result in rejecting the association's proffered credit of dividends, and properly so, because the member has repudiated the contract under which the profits were distributed to his stock. But, while in the Simpson case there was no suggestion of expenses in administering the affairs of the concern, the fact that every share was chargeable with its proportionate part of the ordinary expenses of conducting the affairs of the company was recognized, if not distinctly asserted. When the borrower was credited in these going concerns with only his actual payments of interest, premiums and dues, he was not being permitted to escape altogether payment of his share of the running expenses. He was allowed only 6 per cent. per annum interest on his payments, whereas his money had probably earned, by the system of compounding the interest, a larger per centum. But when from any cause the association ceases to be a 'going concern,' and especially if it becomes an insolvent one, a different plan of settlement is necessitated. That plan is foreshadowed in Rogers v. Rains, 100 Ky., 295, (38 S. W., 483), where it was held that the receiver of a Tennessee association, then in process of settlement in the courts of that state, might collect the sum borrowed, with 6 per centum interest, less all payments made as interest and premiums, but that, as it was impossible for the Kentucky court to determine the value of the stock, no credit could be given for payments made thereon. The true principle is that the stock of each stockholder is burdened with its share of expenses and of losses. But in going concerns it is estimated that the

member's stock is at least worth what he paid on it, and whatever more it may be worth is forfeited for expenses. In insolvent concerns it is to be assumed that there has been an impairment of the capital stock, growing out of losses in the conduct of the business, and the value of the stock can be determined only when the losses are ascertained and the funds ready for distribution. So that the plan adopted in the Simpson case and other cases of going concerns can not be pursued here." In this opinion —from which we have quoted liberally in order to show, not only the doctrine which we have recognized, but the reason for it—the fund from which the expenses of the association and the losses incurred in its legitimate business are to be defrayed is made up of the total value of the unwithdrawn stock of the association. This value consists not only of the amounts paid as dues on stock, but of the profits, real or supposed, on the strength of which dividends have been declared upon the stock. It is true that in the case of nonborrowing members such dividends may have been withdrawn, but it is the stock account—that is to say, the real value of the stock— which remains in pledge to meet the expenses and bear the losses of the insolvent or assigned concern. Of this real value the dividends declared upon the stock and unwithdrawn are just as much a part as are the sums paid as dues and remaining unexpended. We are not speaking at all of the so-called book value of the stock, but of the real value which the shares will represent when the liquidation is completed. And it is obvious that this real value of the stock account would be diminished by permitting any part of it to be offset against a recovery of the loans made by the association. It is quite possible that the book value, in estimating which these dividends

are considered, may be an amount far in excess of the actual value of the stock account. Indeed, it is quite probable that a great part of the dividends were declared upon the strength of usurious interest which the association has been enabled to collect, or for which it has been obliged to account. Upon final settlement, each stockholder will be entitled to his *pro rata*, after the payment of expenses, losses and cost of liquidation. It may be possible that such a showing might be made to the court in which action of the receiver or the assignee is pending as to render it safe to fix an approximate value on the stock before the final distribution, and to make a partial distribution before that time. But that court alone, as said in the Reddick case, can possibly have knowledge of the facts necessary to be shown to render such an estimate justifiable or proper. And in that case, as well as in the Rains case, we have commented upon the extreme caution which should be observed in attempting to make a particular distribution of the stock value in advance of the settlement. It follows, therefore, that, while the circuit court properly refused to credit the amounts paid as dues on the stock upon the mortgage loan, it erred in allowing as credits the amount of dividends declared on such stock, and operating to hasten its maturity. The judgment is therefore reversed, and cause remanded, with directions to set aside the judgment, and enter judgment for the amount, without such credits.