CASE 104—ACTION ON A PROMISSORY NOTE—MAY 16.

# U. S. Bldg. & Loan Assn's Assignee v. Reed.

### APPEAL FROM OWEN CIRCUIT COURT.

JUDGMENT FOR DEFENDANT AND PLAINTIFF APPEALS. REVERSED.

BUILDING AND LOAN ASSOCIATION—ASSIGNMENT FOR CREDITORS—
RIGHT TO HAVE PAYMENTS ON STOCK SUBSCRIPTION APPLIED AS
CREDITS ON LOAN.

Held: 1. Kentucky Statutes, section 561, part of chapter entitled
"Private Corporations," providing that "any corporation organ-
ized under this chapter may, by the consent in writing of the
owners of the majority of its shares of stock, unless otherwise
provided in the articles of incorporation or amendments thereto,
close its business, and wind up its affairs," does not apply to
an assignment for the benefit of creditors.
2. After a building and loan association has made an assignment
for the benefit of creditors, it is too late for a borrowing stock-
holder to have payments made by him on his stock subscription
applied as credits on his loan, though they would have been suffi-
cient to extinguish the debt if he had sought to have them ap-
plied in that way prior to the assignment.

LINDSAY & BATTS FOR APPELLANT.

The first and only proposition:

The appellee has no more, other or greater rights, than any
other borrowing member of the association, and that after the
assignment of the U. S. B. & L. Association to this appellant,
and suit by the assignee to enforce the collection of the debt
owing by the appellee, he can only have the amount paid in in-
terest and premiums, applied to the debt, and all amounts paid
in stock must await the final adjustment, and he take the *pro
rata* distributions by the assignee; the said association not be-
ing a *going concern*. Reddick v. U. S. Bldg. & Loan Association,
20 Ky. Law Rep., 1720; Simrall v. Commercial Bldg. Trust As-
signee, 20 Ky. Law Rep., 1801; Forwood v. Eubank, Assignee,
20 Ky. Law Rep., 1842.

U. S. Bldg. & Loan Assn's Assignee v. Reed.

JOHN W. DOUGLAS and W. A. LEE for APPELLEES.

### THE ONLY THREE PROPOSITIONS:

1. Did the court err in overruling appellee's general demurrer to the petition as amended? Ky. Stats., sec. 561.
2. Was it proper to allow appellee a credit on his loan of the interest, premium and dues, paid on his stock, when they were all paid while the appellant's assignor was a running and a "going concern," making no account of dividends earned on the stock?
3. Can a building and loan association recover of a borrowing member anything for costs and expenses without an itemized statement showing the amount of the expense, and for what purpose used?

### AUTHORITIES CITED.

A building and loan association can not assign without the written consent of a majority of its stock. Kentucky Stats., section 561. Appellee having paid his debt and interest while the association was solvent, was entitled to a credit of all money paid. Ky. Stat., secs. 866, 867, 868; 19 Ky. Law Rep., 1176 and 1325; 88 Ky., 191; 20 Ky. Law Rep., 1770 and 1120; 21 Ky. Law Rep., 1021; same, 1267 and 1313.

The transaction between the association and the member is a borrowing and lending, and the charging of premiums and dues is in the nature of interest. And the rights of the parties must be settled accordingly. 19 Ky. Law Rep., 1176. The appellee is chargeable with "only" the amount loaned to him, with legal interest thereon, 19 Ky. Law Rep., 1325; 21 Ky. Law Rep. 1313.

OPINION OF THE COURT BY JUDGE DuRELLE—REVERSING.

In April, 1891, appellee subscribed for five shares of stock in the United States Building & Loan Association, and paid $3 per month upon his subscription until February, 1892, when he obtained a loan from the association, executing a note and mortgage for $400, and from that time until March, 1897, continued to pay $3 per month on his stock subscription, and in addition paid $4 per month

as interest and premium on his note. In February, 1897, the United States Building and Loan Association made an assignment to the Columbia Finance and Trust Company, appellant, and the assignee instituted this action to collect the balance claimed to be due upon the note. After a demurrer to the petition as amended had been overruled, the appellee filed an answer, set-off, and counterclaim, seeking to have all payments made by him, whether on stock subscription, interest, or premium, credited upon the amount borrowed, with interest computed at 6 per cent., and for a judgment over for the amount so paid which was in excess of such debt and interest. Judgment was rendered dismissing the petition.

Two questions are presented which have not been heretofore considered in exactly the present form. First, it is urged by appellee that the demurrer to the petition as amended should have been sustained, because it did not show that the owners of a majority of the shares of stock of the association had consented in writing that it should close its business, and wind up its affairs, in accordance with section 561, Ky. St. This section provides: "Any corporation organized under this chapter may, by the consent in writing of the owners of the majority of its shares of stock, unless otherwise provided in the articles of incorporation or amendments thereto, close its business and wind up its affairs." This section does not in our opinion, in any way apply to a case of voluntary assignment for the benefit of creditors. It seems to have been intended merely to authorize the holders of the majority of the stock of a corporation to close out the corporation, and withdraw their capital, without respect to its solvency or insolvency. But it is unnecessary to

construe the statute.    It is sufficient to say that it has
no application to an assignment for the benefit of credit-
ors.    It is also insisted for appellee that the judgment of
the trial court was correct, because, before the assign-
ment was made, if all the payments which had for any
purpose been made were applied as payments upon the
debt and interest, they were more than sufficient to extin-
guish it, without reference to the fact that no such appli-
cation had ever been made, or sought to be made, of such
payments before the assignment.    It is argued that,
while the company was still a going concern, its debt
had been extinguished, and its subsequent assignment
did not authorize the company to retain the amounts paid
as dues on stock in the stock account, because the pay-
ments had "by operation of law" been applied to the ex-
tinguishment of the debt and interest.    The foundation
error in this is the claim of application by operation of
law.    The law does not operate to make such application
without action by the parties.    The law leaves those
payments applied to the purposes for which they were
made under the contract between the parties.    It was
held in the Simpson Case 19 Ky. L. R. 1176 (41 S. W. 570), (42
S. W. 834), that in a litigation between a borrowing stock-
holder and a going building and loan association, where no
showing was made by the company of expenses in excess of
profits, the stockholder had the right to have all payments
made by him applied to the extinguishment of his debt.
That decision did not in any way conflict with the deci-
sion in Rogers v. Rains, 100 Ky. 295 (38 S. W. 483), laying
down the rule to be followed in the equitable administra-
tion of the funds of an insolvent or assigned concern.
The distinction is expressly recognized in the Simpson

case in the concluding sentence: "Nor have we before us a case where the assets of the association in the hands of a receiver are for distribution by a chancellor. In such case his duty is clear to protect the interests of all parties alike." In the present case the law made no change in the application of the payments which had been made by the parties themselves. It was not until after the assets of the company were in the hands of the assignee for administration that any effort was made to have a different application of the payments. It was then too late. There is no reason in equity and good conscience why the chancellor administering the insolvent estate of a building and loan association should distinguish between borrowing stockholders on account of the number of payments of dues on stock made by them respectively. If one stockholder subscribes in January, and another in March, and both borrow from the company, and it so happens that the corporation assigns at a time when the January subscriber had made sufficient payments of dues upon his stock to extinguish his indebtedness if such payments of dues be added to his payments of interest and premiums, while the March subscriber lacks two monthly payments of dues of having done the same thing, there is no reason which this court can perceive why the one should be excused from the payment of any part of the expenses of operation of the company of which he was a stockholder and a proportionate part of that burden be thrown upon the other. Both of them are stockholders. Both of them were stockholders at the date of the assignment. Both of them are morally bound for their respective proportions of the expenses of the association. Both of them have made payments which have been duly car-

ried to the stock account for the purpose of paying the stock subscription, and such payments by both subscribers have come into the hands of the assignee for the purpose of extinguishing the debts and paying the expenses of the concern.     After they have come into the hands of the assignee, they can not be diverted to any other purpose, except in so far as they are unnecessary for that purpose—for that purpose for which they were appropriated by both parties at the time the payments were made.     This doctrine, we think, is in full accord with the rule laid down in Globe Building & Loan Co.'s Assignee v. Wood (Ky.) 60 S. W. 859.     It follows, therefore, that the trial court erred in applying the payments on stock subscription as credits upon the note, and to this extent the judgment is reversed, with directions to enter a judgment for appellant in accordance with this opinion.