CASE 12—ACTION-TO RECOVER BORROWED MONEY, BY BUILDING AND LOAN COMPANY'S ASSIGNEE—NOV. 29.

# Globe Building & Loan Co.'s Assignee v. Spillman and Others.

APPEAL FROM ALLEN CIRCUIT COURT.

JUDGMENT FOR DEFENDANTS AND PLAINTIFF APPEALS. REVERSED.

BUILDING AND LOAN ASSOCIATIONS—ASSIGNMENT FOR CREDITORS—RIGHT OF BORROWER TO HAVE PAYMENTS ON STOCK APPLIED TO LOAN.

Held: After a building and loan association has made an assignment for the benefit of creditors, it is too late for a borrowing member to have payments made by him on his stock applied as credits on his loan, when no effort to have this done was made prior to the assignment, except a mere expression of his desire to settle in that way without any actual tender of the money due or of the stock.

D. W. WRIGHT AND EDWARD W. HINES FOR APPELLANT.

This was an action brought by the assignee of the Globe Building and Loan Co. against Sophia Spillman and her husband, A. G. Spillman, to recover a loan made to them by said company and to enforce a mortgage executed to secure the loan.

The amount of the loan was $800, and the only question is as to the credits to which defendants are entitled.

They subscribed for ten shares of stock in December, 1893, and were to pay thereon $6.00 per month—60 cents per share. That amount was paid until the loan was made in May, 1894, and thereafter they paid $14.00 per month, the additional $8.00 per month being paid as interest.

Defendants testify that it was agreed that all payments made by them should be credited on the debt, and that the $6.00 per month paid before the loan was made in anticipation of the loan, and upon the agreement it should be credited on the debt; but they were bound to take notice of the fact that the by-laws of the company did not authorize loans to persons who were not stockholders, and the note they signed recited that it was subject to all the provisions of the articles of incorporation and by-laws of the association. In the absence of an allegation of fraud or mistake the written contract must control.

Even if such contract as is alleged was made, it was *ultra vires*, as the association had no power to make a loan to any person other than a stockholder.

This being true, defendants occupied the dual relation of borrowers and stockholders, and are not entitled, therefore, to credit on their debt for the amount paid on their stock. While they would be entitled, upon a proper showing, to credit by the value of their stock, yet, as the association is insolvent, it can not be assumed that the stock is worth what defendants have paid thereon, *especially when defendants, themselves, allege that the stock is worthless.* It would certainly be a gross injustice to non-borrowing members to give the borrowing members credit by the full amount paid on their stock, and thus relieve them from all liability for losses; and this court has held, in Rogers v. Rains, 18 Ky. Law Rep., 768, that this can not be done.

It seems clear, therefore, that the court erred in giving defendants credit for the $6.00 per month paid on their stock.

**B. W. BRADBURN,** ATTORNEY FOR APPELLEES.

The appellees claim that appellant is not entitled to recover except upon the $800 note, with 6 per cent. per annum interest thereon, subject to be credited by the payments made, $14.00 per month.

The right to have applied as credits the $14.00 per month is denied upon the ground that $6.00 of the $14.00 was paid as dues, and only $8.00 was applied as a credit. Appellant contends that appellees agreed to take ten shares of stock and to pay $6.00 per month as dues upon this stock; that the $6.00 was so applied until the company assigned in June, 1897; that since the assignment the $6.00 was retained for the purpose of paying appellee's part of the expenses necessary to wind up the estate of the assignor.

Waiving the question of agreement that appellees should have credit for the $14.00 paid each month, we insist for two reasons the appellees' contention is right:

Globe Building & Loan Co.'s Assignee v. Spillman *et als.*

(1) In February, 1897, while the association was a "going concern," the appellees learned that they were being credited with only $8.00 of the $14.00 per month, and upon said date notified the association that they declined to carry said stock any longer, and asked for a statement with a view of settling and paying off said debt. In response to this, the company sent a statement to appellees claiming a balance of $530. Appellees claim that they thought in good faith that the $14.00 paid per month was being credited, until February, 1897; that after the statement was received by them, and while the association was solvent, the appellees found, upon a calculation made of the interest upon the $800 loan, at the rate of 6 per cent. per annum from the date of the note to March 1, 1897, crediting the note by $14.00 paid each month, that they were indebted to the company in the sum of $406.38. This sum was tendered to the company by appellees, and an offer made to surrender all claim upon stock. This tender and offer was refused in March, 1897.

(2) That as soon as the borrowers learned that they were being credited with only $8.00 per month, they sought a settlement and offered the balance due—$406.38—and the company was then solvent and a "going concern."

If these propositions are true, then the lower court properly decided the case, by whose judgment the plaintiffs recovered $406.38, with interest thereon from February, 1897.

### AUTHORITIES CITED.

Safety B. & L. Co. v. Ecklar, 20 Ky. Law Rep., 1770; U. S. B. & L. Association's Assignee v. U. S. B. & L. Association's Assignee, 21 Ky. Law Rep., 1763; Munday v. Kean's Adm'r, 5 Ky. Law Rep., 697; U. S. B. & L. Association v. Reed, 23 Ky. Law Rep., 342.

OPINION OF THE COURT BY CHIEF JUSTICE PAYNTER—REVERSING.

In the fall of 1893 the appellee Sophia Spillman subscribed for ten shares of stock in the Globe Building & Loan Company. It was to be paid for in monthly payments of $6. In May, 1894, she borrowed from the company $800, agreeing to pay $8 per month interest therefor, and to secure which she gave a mortgage on real property in Scottsville, Ky. From the time she borrowed the money her weekly payments were to be $14, $6 of which was paid on

stock and $8 on interest. In the fall of 1896 she concluded to pay the debt, but in doing so she desired it should credit her with all the payments which she had made it either on stock or interest; in other words, she desired all the payments which she had made should be applied as partial payments on the debt. The company's attention seems to have been first called to her desire to settle the debt by a letter which her husband wrote to it on November 25, 1896. In this letter he said that she desired to settle the debt, and wanted a tabulated statement showing the amounts that had been paid on it. He said that she desired to know the "amount of the dividends, and in fact all the transactions." On March 24, 1897, he again wrote the company that his wife desired to pay the $800, and claimed that on March 1, 1897, there was due it $406.38, and said that the amount was ascertained by taking the $800 principal with six per cent. interest from date of loan, and applying the several payments as credits thereon. He said that she was ready to pay the amount and surrender the stock. The company made him a statement which showed that the amount due it was much more than claimed by him. The company, in answer to his letter of March 24th, wrote him that it had been referred to its attorneys, Sims & Covington, Bowling Green. Spillman, representing his wife, seems to have had an interview with the attorneys, and made them substantially the same offer that he had made the company in his letter. He never tendered the money either to the attorneys of the company or to it, nor did he ever actually tender the stock, except in the manner stated. At this time it was a going concern. The appellee does not seem to have taken any further steps with reference to the settlement of the debt. The company

shortly afterwards appeared to be insolvent, and made an assignment.

The question to be determined is whether or not in the settlement of this transaction between the company and Mrs. Spillman it should be settled as if it were a going or insolvent concern. If it is to be made with it in its present insolvent condition, then the case of Association v. Reed (110 Ky., 874), (23 R., 342), (62 S. W., 1020), must control. It was held in that case that, after a building and loan association has made an assignment for creditors, it is too late for the borrowing stockholder to have payments made by him on his stock subscription applied as credits on his loan, though they would have been sufficient to extinguish the debt in that way prior to the assignment. If the proposition which was made before the assignment, which we have detailed, operates as an application of all payments as a credit upon the debt and as a cancellation of the stock, then Mrs. Spillman, while it was a going concern, acquired the right to have the court settle her rights as if the company were a new and going concern. In the Reed case the court said: "It was not until after the assets of the company were in the hands of the assignee for administration that any effort was made to have a different application of the payments. It was then too late." By the use of the language the court was simply stating the facts of the case, and was not determining what kind of effort made by him before the company assigned would entitle a borrowing member, after the assignment, to settle with the company as if it were a going concern. There was no such tender as would stop the running of the interest upon the debt. No money was ever tendered the company in payment of its debt. No actual tender of the stock was ever made. It was sim-

ply a general statement made by the husband of Mrs. Spillman that she was willing to settle the debt upon a certain basis, which meant the surrender of the stock and the application of the money which had been paid therefor as a credit upon the debt which she owed the company. Instead of actually tendering the amount which she claimed she owed and the stock which she held, she let the matter drift along until the association made an assignment. The company could not, by reason of the effort which had been made by the husband for his wife, have compelled her to have surrendered her stock, and treated the debt as matured. It could not have gone into court and enforced a settlement according to the offer of Spillman. It seems to us the company was never called upon to act, and the appellee was never entitled to have any part of the amount which she had paid on her stock subscription applied as a credit upon her debt before the association made an assignment. We are therefore of the opinion that this debt should be settled upon the principle enunciated in the Reed case, which is a settlement with an assigned estate.

The judgment is reversed for proceedings consistent with this opinion.