CASE 70—ACTION TO ENFORCE A MORTGAGE LIEN.—FEB. 4.

# Vinton v. National Building & Loan Association, &c.

### APPEAL FROM ROWAN CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANT APPEALS. AFFIRMED.

BUILDING AND LOAN ASSOCIATIONS—CREDIT ON LOAN OF PAYMENTS MADE ON STOCK—APPLICATION FOR WITHDRAWAL PRIOR TO INSOLVENCY OF ASSOCIATION.

Held:   Payments made by a borrowing member as dues on stock, can not, by operation of law, be applied to the extinguishment of the debt and interest, after the association has become insolvent, though application by the member for withdrawal was made prior to the insolvency of the association.

JAMES G. WHITE AND JAMES E. CLARKE, ATTORNEYS FOR APPELLANT.

The original petition in this action was filed by appellee, *as a going concern*, March 4, 1898, and on October 27, 1898, C. C. Chenault, as special receiver, filed an amended petition in which he alleges that on June 4, 1898, the judge of the Montgomery circuit court declared said association to be insolvent and appointed said Chenault special receiver thereof, etc., and, in its original petition, plaintiff alleged that appellant was indebted to it as balance on the loan fund sued on, in the sum of $263.78, but in the amended petition filed by the receiver, he alleges, (based on the idea of the insolvency of the institution) that appellant is indebted to said association in the sum of $750 with interest thereon from March 3, 1893.

Appellant in his answer, set-off and counter-claim, filed June 8, 1898, after traversing the allegations of the petition, alleges, "that at the time the loan of $1,000 was made to him by appellee, he held twenty shares of stock in said association, and had made forty-eight monthly payments (consisting of dues, interest, premium, etc.) of $23.74 each, on said stock, besides $2 in fines, amounting in all to $1,275.25 and that in February, 1897, after making said payments he filed with appellee for withdrawal, ten shares of said stock, which the company received and now has the certificate therefor in its possession together

with dues and premiums above stated. In connection with this he pleads that appellee had failed to give him credit therefor, and that appellee is seeking the recovery of usurious interest; that appellant has overpaid the note and mortgage sued on, and upon a full and fair settlement appellee will be indebted to him in the sum of $35.23 for which he asks judgment on his counter-claim, with interest. These allegations are not denied, and at the time these payments were made the said association was solvent and in good standing.

The obligation of appellant's bond executed for the $1,000, provides as follows:     "*It is further agreed that this entire indebtedness may be paid at any time before maturity at the option of the undersigned obligor, in which case the said shares of capital stock may be surrendered to the association at their cash value.*"

Appellant claims that he had the right to withdraw at any time not only by his contract, as quoted above, but also by the provisions of secs. 860 and 866 Kentucky Statutes.

### AUTHORITIES CITED.

U. S. Savings & Loan Assn. v. Colson, 21 R., 12; Safety B. & Loan Assn. v. Eclar, 20 R., 1770; People's B. & Loan Assn. v. Pryse, 19 R., 752; Mutual Savings & Loan Assn. v. Owings, 19 R., 1325; U. S. Savings & Loan Co. v. Scott, 98 Ky., 698; Southern B. & L. Assn. v. Harris, 98 Ky., 44; Kentucky Statutes, secs. 860, 866.

HENRY WATSON, FOR APPELLEE.

The only question to be decided in this case is, whether or not the court erred in allowing appellant credit as payments on his loan, *only* for the interest, premiums, fines, etc., paid. It being an insolvent concern we say the court was correct. Appellant in his petition alleges it is insolvent and in the hands of a receiver and this is not denied.

The court referred the case to the master commissioner with directions to give appellant credit for all interest and premiums paid, and charge him with six per cent. interest on his loan and this was done. Rogers v. Raims, 100 Ky., 299; U. S. B. & L. Assn.'s Assignee v. Rowland, etc., 22 R., 1433; Globe B. & Loan Assn., etc. v. Stephens, 22 R., 1441.

OPINION OF THE COURT BY JUDGE DURELLE—AFFIRMING.

The National Home Building & Loan Association on March 4, 1898, filed its petition to enforce its mortgage lien upon a lot of land in Morehead for $263.78, as the

balance due on a loan of $1,000 made in 1893 to appellant Vinton upon 10 shares of the stock of the company. In this petition credit is given not only for the amounts paid as interest and premium, but for the monthly payments made as dues on the 10 shares of stock on which the loan was made. On June 8, 1898, Vinton filed his answer, denying that he owed anything to the association, and alleging that at the time of the loan he held 20 shares of stock, upon which he made 48 monthly payments; that in February, 1897, he filed for withdrawal 10 shares of the stock, and the association received and retained his certificate therefor, but has refused to give him credit on the mortgage sued on for the dues paid upon those ten shares; and that the note and mortgage have been overpaid in the sum of $35.23, for which sum he prayed a judgment over. On October 27, 1898, C. C. Chenault, as special receiver of the association, filed his petition to be made a party, alleging that on June 8, 1898, the appellee association had been, by a judgment of the circuit court of Montgomery county, adjudged to be insolvent, and the petitioner had been duly appointed receiver, and duly qualified as such; that by the order of appointment he had been directed to proceed to the liquidation of the association, to institute suits, and cause himself to be made a party to the suits already instituted, and prosecute same as receiver. This petition, which is referred to as an amended petition, gives credit only for the interest and premiums paid upon the loan, and claims the amount due from Vinton to be $750. A reply was filed by the receiver, denying the payments pleaded, alleging the insolvency of the corporation, and that by reason thereof credit should not be given for amounts paid as dues, either on the 10 shares of stock pledged as collateral security, or upon the other 10 shares. An order of refer-

ence was accordingly made, directing the master to give appellant credit for all interest and premiums paid. The master reported the amount due from Vinton to be $669.73, and the court accordingly rendered judgment for that amount.

The correctness of the calculation by the master does not seem to be disputed, but it is claimed that the basis of computation was incorrect, in this: That, by the application for withdrawal of the unpledged 10 shares held by appellant, his right to the withdrawing value of his shares at the date of the notice became fixed, under section 860, Kentucky Statutes, and under the terms of the bond executed for the loan, and appellant thereby became entitled to a credit for the withdrawing value of his unpledged shares. The bond provides that, in case of default and forfeiture of the pledged shares, the value thereof, at the option of the association, may be applied in the payment of the obligation; that, in case of payment before maturity, the obligor may surrender his pledged shares at their cash value. Sections 860 and 866 provide substantially the same thing. By section 860 it is enacted that a member may withdraw his unpledged shares at any time by giving the notice provided, "and shall thereupon receive the withdrawing value of his shares at the date of the notice, and this withdrawing value shall be the amount of the dues paid thereon, together with such proportion of the profits as the by-laws may determine, less all fines, expenses and proportionate part of any unadjusted loss." Section 866 provides that a borrower may repay a loan at any time, in even shares, whereupon he "shall be given credit for the withdrawing value of his shares pledged and transferred as security." There is no basis in this record for

any claim of payment of the loan, except the contention
that the amount of interest and premiums paid, together
with the amounts paid as dues on stock, both pledged and
unpledged, was sufficent to discharge the entire debt and
interest before the bringing of the suit, and when the cor-
poration was, or may be assumed to have been, solvent,
and that these payments of interest, premiums, and dues
should, by operation of law, be applied to the discharge
of the debt. This exact question was fully considered in
United States Building & Loan Ass'n's Assignee v. Reed
110 Ky., 874 (23 R., 342) (62 S. W., 1020); and it was held
that payments made as dues on stock could not, by opera-
tion of law, be applied to the extinguishment of the debt
and interest in such a case, having been by action of the
parties applied to a different purpose.

The question remains to be considered whether the no-
tice of withdrawal of the unpledged shares so fixed the
stockholder's rights to their withdrawing value as to en-
title him to a credit therefor upon his debt, upon the sub-
sequent insolvency of the association. There is nothing
in this record to show why his application for withdrawal
was not complied with, and why he did not obtain the with-
drawing value. The only fact that appears is that these
sums were paid as dues on stock, were presumably car-
ried to the stock account, and presumably remained in that
account, subject, in the language of section 860, to his
"proportionate part of any unadjusted loss." They were
subject to such part of such loss at the time he made the
application, by the very terms of the statute. They are
none the less subject to it now because, for some unex-
plained reason, the association failed to take action upon
his application for withdrawal at the time he made it. So
long as these payments made to the stock account for the

purpose of paying the stock subscription have not been actually withdrawn from the assets of the association, they remain assets for the purpose of extinguishing the debts and paying the expenses of the concern; and, the concern being now in process of liquidation, they can not be diverted to any other purpose than the one to which they were appropriated by both parties at the time the payments were made, except in so far as they may be judicially determined to be unnecessary for that purpose.    United States Building & Loan Ass'n's Assignee v. Reed, supra.    The duty of the chancellor, when the assets of such an association are in the hands of a receiver or an assignee for distribution, 'to protect the interest of all parties alike, and to allow no stockholder to escape his just proportion of the losses or expenses which in good conscience he should be required in part to bear, is distinctly recognized in the opinion by Judge Hazelrigg in Simpson v. Loan Ass'n, 101 Ky. 496 (19 R., 1176), (41 S. W., 570, 42 S. W., 834).    And see End. Bldg. Ass'ns (2d Ed.), section 523;    Rogers v. Rains, 100 Ky., 299 (18 R., 768), (38 S. W., 483); Strohen v. Loan Ass'n (Pa.) 8 Atl., 843.    And in Reddick v. United States Building & Loan Ass'n's Assignee, 106 Ky., 94 (20 R., 1722) (49 S. W., 1075), Chief Justice Hazelrigg, delivering the opinion of the court, said: "The right of withdrawal is not an absolute one, any more than is the right of the borrowing member to pay his loan by monthly payments until the maturity of his stock cancels his loan. . . . But in the latter event, no more than in the former, can he rely on the exact terms of his contract.    And these terms all come to nothing when the scheme falls through.    The chancellor can not carry on the enterprise when the parties themselves have failed, and the only thing possible is to wind it up on equitable prin-

ciples.  As in the one case the borrowing member can not complain of the violation of his contract coming from a precipitation of the maturity of his loan, so in the other the withdrawing member can not say he has an absolute right to a specific performance of the letter of his contract. Judge Endlich, in his work on Building Associations (2d Ed., section 108) affirms the doctrine that 'the fact of insolvency of an association negatives the right of any one to obtain a priority over his fellows by giving notice of withdrawal; citing Christian's Appeal, 102 Pa., 184, and other cases." The stock of each stockholder, whether it be pledged stock of a borrowing member or investment stock, is at all times subject to the burden of its share of the losses and expenses.  In going concerns, as said by Judge Hazelrigg in the Reddick Case, supra, it is estimated that the member's stock is at least worth what he paid on it, and whatever more it may be worth is forfeited for expenses.  In insolvent concerns it is to be assumed that there has been an impairment of the capital stock, growing out of losses in the conduct of the business, and the value of the stock can be determined only when the losses are ascertained and the funds ready for distribution.  And we are of opinion that the mere date of an application for withdrawal of stock presents no bar to the right of other stockholders to insist, through the assignee or the receiver, upon the subjection of payments to stock account to the payment of proportionate amounts of the losses and expenses of the concern.  To hold otherwise would be to lend the aid of the courts to the placing of a disproportionate part of this burden upon the borrowing members— the class for whose benefit the law is supposed to have been designed, and who, as their stock is in pledge to the association, can not apply for its withdrawal.  So long as

the stock payments remain in the hands of the association, no matter what the date of the application for withdrawal, they remain subject to this burden.

For the reasons indicated, the judgment is affirmed.

Whole court sitting.