## Telephone Co. *v.* Brown.

### (*Nashville.*    January 20, 1900.)

1. **Telephone Company.**  *Negligence in delivery of messages.*

    A telephone company, whose operator has received a message for delivery, and negligently failed to deliver same with promptness, is responsible for damages resulting from its operator's act, although its operators were forbidden by general instructions to receive messages for delivery on the company's account, but were permitted to do so on their own account, making all arrangements therefor over the company's line, and receiving the additional compensation for this service for themselves.  (*Post, pp. 58, 59.*)

2. **Same.**  *Test of company's liability for agents' acts.*

    The liability of a telephone company to its customers and the public for the acts of its agents and operators is not to be measured by the company's instructions to its agents and operators, which they are permitted habitually to violate, but by the course of business actually pursued by its agents and operators and recognized and approved by the company.  (*Post, pp. 59–61.*)

    Case cited: Railroad *v.* Reagan, 96 Tenn., 129.

3. **Same.**  *Duty as to delivery of message.*

    The duty of a telephone company and its agents to deliver a message promptly is absolute, and the agent has no right to speculate as to whether its prompt delivery will benefit or avail the sendee.  (*Post, pp. 61, 62.*)

4. **Same.**  *Damages recoverable for delay in delivery of message, when.*

    In an action by a father to recover damages for the deprivation of seeing his daughter before her death, resulting from the negligent delay of·a telephone company in delivering the summoning message, it must appear, to entitle plaintiff to recover, that he both could and would have arrived before his

Telephone Co. *v.* Brown.

daughter's death if the message had been promptly delivered. (*Post, pp. 62, 63.*)

---

FROM   DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County.   J. W. BONNER, J.

HILL McALISTER and VERTREES & VERTREES for Telephone Co.

DOUGLAS WIKLE and FIRMAN SMITH for Brown.

CALDWELL, J.   The Cumberland Telephone Company appeals in error from a judgment for $500 recovered against it by J. T. Brown for negligent delay in the delivery of a message.

Brown was a resident of the city of Nashville, but was temporarily at Hickman, a small village about fifty-eight miles from Nashville, and two miles beyond Gordonsville. The telephone company had an office at Nashville and one at Gordonsville, but none at Hickman.

In the afternoon of September 16, 1897, Brown's son went into the office at Nashville and stated to the operator there that he had an important message for his father at Hickman. The operator called the company's agent at Gordonsville, and put the son in communication with him. The son, availing himself of the instrument

and connection thus afforded, communicated his message to the Gordonsville agent, who agreed to deliver it at Hickman; and thereupon, according to the usual custom, the Nashville agent demanded and received sixty-five cents in payment of total charges, being twenty-five cents for the transmission of the message to Gordonsville and forty cents for its delivery at Hickman. The message, as written by the agent at Gordonsville, was as follows:

"NASHVILLE, TENNESSEE, 9--16--97.

"Mr. J. Thomas Brown, Hickman, Tennessee.

"Come home immediately. Your daughter is dangerously ill.

"(Signed)                TOM BROWN."

Though received at Gordonsville at 5:15 P.M. of that day, and so marked on its face, the message was not delivered until about 8 or 8:30 A.M. the next day, which was near fifteen hours after the agent got it, and some five hours after the sendee's daughter's death, of which he learned thirty minutes later through another message transmitted over the same line, and likewise delivered at Hickman.

The company virtually concedes the foregoing facts; but, nevertheless, denies its liability in this case upon the ground that it had instructed its operators not to receive messages from anyone to be by any agent of the company delivered to the sendee, and that the undertaking of the Gordons-

Telephone Co. *v.* Brown.

ville operator to deliver this message at Hickman was, therefore, without authority, and not binding on his principal.

It was in relation to this phase of the case that the trial Judge gave the charge against which the first assignment of error in this Court is directed. That charge is in this language, namely: "In the opinion of the Court this instruction to employees is of little consequence, under the conceded facts of this case. If the company knowingly permitted its employees, over its own wires, to make such arrangements with customers, ascertained from such employees the cost of delivery beyond the terminus of the line, and there collected from the customer compensation for the entire work, then the fact that under its arrangement with its distant operators they were to receive the pay for the delivery beyond the terminus, could make no difference so far as the customer was concerned; and the negligence of such operator, if proven, would be the negligence of the company itself."

We are not able to perceive any error in this charge, but on the contrary we regard it as entirely sound.

No instruction of the company to its operators, however formal and peremptory, could prejudice the rights of a customer if it knowingly permitted those agents to conduct its affairs upon a plan in direct conflict with that instruction. The

course of business actually pursued by the company's agents with its knowledge is the proper and legal criterion of its responsibility to its customers. As to the public its legal relation is that indicated by its recognized course of business, so long as the latter does not contravene some rule of positive law or sound public policy.

The habitual breach and disregard of the instruction by the operators of the company, with its knowledge, amounts to a practical abrogation of the instruction (*Railroad* v. *Reagan,* 96 Tenn., 129, 140), and makes the status of the company that which its real course of business imports.

This is equally true, though the company was not bound in the first instance to receive and deliver messages at all, but only to furnish suitable instrumentalities for verbal communication between separated members of the public; for, it had the legal power to assume the additional duty, and could do so as well in the manner indicated as by the promulgation of formal notice of such purpose.

Nor is it of any legal consequence in the present case that the Nashville operator may have testified that he told the sender of this message that the company would not undertake to deliver it, since he concedes that he furnished the connection with the express understanding that the Gordonsville operator was to be requested to deliver it, and with the assurance that he would do

whatever he agreed to do about it, and after the arrangement was consummated, collected the charges for delivery as well as for tolls, and turned the same into the treasury of the company.

The formal statement that the company would not undertake to deliver the message, if made, must go for nothing in the face of the undisputed facts which show that it did in reality, and according to its custom, undertake and agree by its Gordonsville agent to do it.

Had the message been delivered promptly, Brown would have had an election between coming to Nashville by such private conveyance as he might have been able to secure, or by the next westbound train, which was scheduled to pass Hickman at about ten o'clock the next morning.

The Gordonsville agent testified that he supposed the train would be elected, and that for that reason he was not so prompt in delivering the message as he would otherwise have been.

In the course of his charge as to the measure of diligence to be exercised in delivering the message, the trial Judge correctly said: "In this connection I will further instruct you, gentlemen, that the operator would have no right to speculate upon the question as to what conveyance Mr. Brown would take on his way home, or to determine the time of delivery of the message by the fact that the next railroad train did not pass until the next day."

Undoubtedly it would have been for Brown alone to decide which of the two modes of conveyance he would adopt, and, that being his exclusive right, it must obviously have been the duty of the messenger to exercise such reasonable diligence as would have left him to make that decision for himself at the earliest practicable time.

In another part of the charge the Court said to the jury: "In order for the plaintiff to recover he must show by a preponderance of the evidence, first, that defendant's agent did not exercise reasonable diligence in delivering the message, and, second, that had it been delivered without unreasonable delay, the plaintiff, after receiving it, could by reasonable diligence have reached his home before his daughter's death."

The latter proposition is too narrow, in that it did not include the additional requirement that the jury should find that the plaintiff would have reached his home before the death of his daughter. That he could have done so is not sufficient. To fix liability on the company, it must appear both that the means of making the journey in so short a time could have been found, and that they would have been made available.

The practicability of such a fact does not necessarily imply that it would have been undertaken and accomplished. It may be that he could have performed the exploit, and yet would not have

done so; and it matters not in this case that he could unless he would, since it is for the deprivation of seeing his daughter before she died that he sues.

To cure this omission in the general charge, the defendant's counsel submitted a special instruction, as follows:

"Before you can find for the plaintiff you must believe from the evidence that he both could and would have driven the distance from Hickman to Nashville. that night, and that he would have arrived in Nashville before his daughter died."

The Court refused this instruction, and thereby repeated and emphasized the error in the general charge.

Since a new trial must be granted on account of this error in the charge and ruling of the Court, it is not necessary to say more of the assignment against the judgment for alleged excessiveness than that $500 is regarded as a very full recovery.

Reverse and remand.