## Cumberland Telephone & Telegraph Company v. Brandon.

(Decided June 20, 1913).

### Appeal from Calloway Circuit Court.

Telephone and Telegraph Companies—Power of Operator to Contract—Contract to Deliver Oral Message—Actual Authority—Apparent Authority—Rule.—A rule of a telephone company forbidding operators to deliver oral messages is reasonable, but the

publication of the rule in books issued to its subscribers is not notice to one not a subscriber, and a contract with a non-subscriber made by an operator to deliver an oral message upon the payment of a fee of 25 cents, being within the scope of his apparent authority, is binding on the company in the absence of notice to the sender of any limitation upon the power of the operator to contract.

WHEELER & HUGHES for appellant.

HOLLAND & HANBERRY and THOMAS P. COOK for appellee.

Opinion of the Court by William Rogers Clay, Commissioner—Affirming.

Plaintiff, John Brandon, brought this action against defendant, Cumberland Telephone & Telegraph Company, to recover damages for its failure to deliver to him a message announcing that his mother was not expected to live. On the first trial of the case the court directed a verdict in favor of defendant. In reversing the case the court said:

"Whether or not Phillips, as a local subscriber, had a right to demand that this message be delivered, or whether or not the company was engaged in the business of delivering messages for local subscribers, or whether or not the operator at Murray had authority to receive this message and agree to deliver it, or what his duties were in connection with messages of this character, we refrain from discussing. We only decide that on the facts before us the case should have gone to the jury."

On the return of the case another trial was had which resulted in a verdict and judgment in favor of plaintiff for $500. The defendant appeals.

The facts developed on the trial are substantially as follows: On March 8, 1911, plaintiff was a resident of the city of Murray, Kentucky, and resided within three blocks of the exchange of the defendant. His brother-in-law, A. R. Phillips, lived about eight miles in the country. Neither plaintiff nor his brother-in-law was a subscriber of the defendant. Phillips was a subscriber to the Hazel Telephone Company, and had an instrument in his house. Plaintiffs mother, who lived with Phillips, had been in feeble health for some time. According to the evidence for plaintiff, she was taken suddenly worse on March 8th. Some time between seven and eight o'clock, p. m., Phillips called the Hazel ex-

change and got connection with the defendant's exchange at Murray. He asked the operator at Murray if he could deliver a message for him to John Brandon. The operator told him he could, but it would cost him a quarter. Whereupon Phillips said, "All right; I will pay that, or whatever you charge.' The operator thereupon agreed to deliver the message. Phillips then gave to the Murray operator the following message: "John Brandon, Murray, Ky., Your mother is not expected to live until morning. Come at once. A. R. Phillips." This message was repeated by the Murray operator to Phillips. The message was never delivered to plaintiff. had he received it, he says, he could and would have gone at once to his mother's bed-side, and could have reached her before her death, which occurred about 11:15 a. m., the next day. The evidence for plaintiff further tends to show that there was a contract between the two companies by which the subscribers of each had the right to talk to any subscriber of the other, and that either company, in performing a service for the subscriber of the other, looked to the other company to collect its fees. In this case the fee of 25 cents was collected by the Hazel Company.

According to the evidence for the defendant, no message from Phillips to Brandon was received at the exchange at Murray between seven and eight o'clock. It was not received until between ten and eleven o'clock that night. Bynum, the operator in charge at that time, says that he had a conversation with Phillips between ten and eleven o'clock on the night of the 8th. As to the conversation, he testifies as follows:

"I received a message from Mr. Phillips. Mr. Phillips called and asked if that was Murray. I said 'Yes, sir.' He says 'I will O. K. a 10 cent message fee, and pay it the next time I come to Murray, if you will send word to Mr. Brandon that his mother is very ill.' I says 'I will try to get word to him.' I tried everywhere—all points in town—where I thought I could find a messenger boy, and couldnt' find one nowhere; it was about eleven o'clock at night."

Bynum further says that he called at the livery stable where he generally found messenger boys, and also the hotel and several groceries, but failed to find a messenger. He knew he had no authority to take a message and deliver it to Brandon for pay. He didn't agree to deliver said message for pay. He attempted to de-

liver the message as a matter of accommodation to Mr. Phillips and Mr. Brandon, whom he knew. Defendant also introduced the books of the company which are printed and delivered to the subscribers of the Murray exchange. These books contain the rules that were in force at the time, and one of the rules is as follows: "Employees of the Cumberland Telephone & Telegraph Company, Incorporated, are positively forbidden to take oral messages." There was also evidence to the effect that while Phillips, as a subscriber of the Hazel Telephone Company, under the contract between the companies, had the right to demand, through defendant's exchange at Murray, connection with any subscriber of defendant's Murray exchange, yet the agreement did not authorize any subscriber to either the Hazel or Murray exchange to use the long distance toll lines of the defendant without paying therefor. The evidence shows that Bynum, the operator in charge of the switching at the Murray exchange, was a local operator. In order to deliver the message he would have been compelled to leave the switch-board. It was further shown that defendant was not engaged in the business of delivering messages for local subscribers for pay.

The principal contention of the defendant is that the trial court erred in refusing to direct a verdict in its favor. The basis of this contention is that a telephone company has the undoubted power to make reasonable rules and regulations regarding the conduct of its business with the public; that the rule forbidding employees to take oral messages is reasonable; that the publication of the rule in the book which defendant issued to its subscribers was sufficient notice to its patrons, in the absence of actual knowledge on the part of such patrons, that it was not within the scope of the operator's apparent authority to contract for the delivery of an oral message, and as the company did not hold itself out as contracting to receive or deliver oral messages at the local exchange, it is not liable for a failure to deliver such message, though the local operator agreed to deliver it. The evidence in this case, however, shows that Bynum was the operator in charge both of local and long distance connections. It was certainly not incumbent upon Phillips to call for any superior officer and ascertain whether or not Bynum had authority to make the contract in question. As Bynum was

in charge, and was the only person to whom Phillips was required to look, Phillips had the right to assume, in the absence of notice to the contrary, that he had authority to bind the company. Bynum's act, therefore, was clearly within the scope of his apparent authority. The mere publication of the rule in question, in the books issued to its subscribers, was not notice to Phillips, who was a non-subscriber. It is argued, however, that this view of the law places the telephone company at the mercy of an operator who disobeys its rules, for he, in violation of its rules, may make a contract that will subject it to a liability never contemplated by it. In a sense this is true, but it is a risk which the principal always takes when he invests an agent with apparent authority. In such a case one of two things must happen: Either the company or the patron must suffer. No fault can be imputed to the patron, for he acts without knowledge of any limitation on the power of the operator. The company, however, employs and discharges the operator. It has control over him. If he exceeds his actual authority and makes a contract within the scope of his apparent authority, he is, nevertheless, the company's agent, and the loss should fall upon it, whose fault it is in having an agent who violates its rules, rather than upon the patron, who has no control over him and who is in no way responsible for his acts. It is immaterial that the company had no messenger at hand by means of which it could carry out the contract. If notice of the operator's limited authority was not brought home to Phillips, the making of the contract in question was within the scope of the operator's apparent authority, and the company is bound by the contract which he made, and the fact that he had no means of carrying out the contract is no defense. This rule does not conflict with the doctrine laid down in the case of Cumberland Tel. & Tel. Co. v. Atherton, 112 Ky., 155. In that case the contract to deliver the message was made by a messenger boy. The court held that the nature of his agency—a mere messenger—was notice of the limitation upon his power to enter into contracts for the telephone company.

While one of the instructions is subject to verbal criticism, we conclude that the instructions fairly presented the law of the case.

Judgment affirmed.